**Robert L. CAMPBELL, Plaintiff-Appellant Cross-Appellee,**

v.

**W.R. BOWLIN, et al., Defendants-Appellees Cross-Appellants.**

No. 83–2130
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1984.

Daves, McCabe & Hahn, Larry R. Daves, Tyler, Tex., for plaintiff-appellant cross-appellee.

Fairchild, Price, Russell & Thomas, Grover Russell, Jr., Center, Tex., for defendants-appellees cross-appellants.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

PER CURIAM:

Plaintiff-appellant, Robert L. Campbell, appeals from the district court's directed verdict in favor of the defendants in this section 1983 action. Finding that the case should have been presented to the jury, we reverse and remand for trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Campbell filed this section 1983[1] suit against the City of Center, Texas, and various members of the City Council, in both their individual and official capacities, on August 5, 1981, alleging that he had been denied municipal services to a tract of land he had purchased in 1975. As a basis for his suit, he alleged that the defendants had deprived him of water and sewage facilities and had refused to grant him building permits on account of race and on account of his filing of complaints with various government agencies concerning the expenditure of public funds; Campbell further alleged that once the city agreed to connect his property to city water and sewage lines, they failed to connect the services within the agreed forty-five days because of the previous complaints filed by Campbell.

In 1975, Campbell purchased a piece of property located in the eastern portion of Center, in an area known as "the Quarters," which is populated almost entirely by black residents. Two old houses sat upon this property, neither of which had sewers or running water. Campbell later built four additional houses upon this property. None of these houses were hooked up to city water and sewage lines until 1981. Campbell claims that this was due to racial animus on the part of city officials. At trial, after both parties had presented their evidence, the district court found that the evidence clearly and overwhelmingly established that Campbell had not been discriminated against on the basis of race pursuant to an official policy or custom of the City of Center. The district court accordingly granted defendants' motion for a directed verdict; judgment was entered on February 22, 1983 and the defendants were awarded attorneys' fees for the trial.

Campbell filed a notice of appeal on February 28, 1983. On March 3, defendants filed a motion to alter or amend the judgment of the district court pursuant to Fed. R.Civ.P. 59(e), seeking attorneys' fees for this appeal under 42 U.S.C. § 1988 (1976).[2] An order granting the motion was entered April 15, 1983. On May 20, Campbell filed a motion to extend the time for filing his notice of appeal, on grounds that his "counsel failed to realize that a new notice of appeal was required" under Fed.R.App.P. 4(a)(4). Defendants filed an opposition. The district court granted an extension and Campbell filed his notice of appeal on May 31, 1983, within the time set by the court. Defendants cross-appealed the order.

## II. TIMELINESS OF CAMPBELL'S APPEAL.

The first issue we must address is whether Campbell's appeal should be dismissed as untimely. Fed.R.App.P. 4(a)(1) provides that a notice of appeal must be filed within thirty days of entry of final judgment; Campbell filed a notice of appeal within thirty days of the district court's final judgment. However, Fed.R.App.P. 4(a)(4) provides that if a timely Fed.R.Civ.P. 59(e) motion is filed,

> the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motions. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A

1. Section 1983 provides in pertinent part:
   > § 1983. *Civil action for deprivation of rights*
   > Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1976).

2. Section 1988 provides in pertinent part:
   > § 1988. *Proceedings in vindication of civil rights; attorney's fees*
   > In any action or proceeding to enforce a provision of section 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs.

new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above.

Campbell failed to file a new notice of appeal within thirty days of the district court's order granting defendants' Rule 59(e) motion. He thereafter requested an extension of time for filing a notice of appeal under Fed.R.App.P. 4(a)(5), which provides that "upon a showing of excusable neglect or good cause," the district court "may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)."[3] Campbell's sole excuse for being untimely was that his counsel was not aware that a new notice of appeal was required. The district court granted an extension "for good cause shown," with no finding concerning excusable neglect.

Defendants argue that the district court abused its discretion in granting an extension of time. They argue that Campbell's motion should have been examined under the "excusable neglect" standard, and that a mistake or misunderstanding of the law by counsel cannot constitute "excusable neglect." *See Wansor v. George Hantscho, Co.,* 570 F.2d 1202, 1205–07 (5th Cir.1978), *cert. denied,* 439 U.S. 953, 99 S.Ct. 350, 58 L.Ed.2d 344 (1979).

■ As to the district court's original judgment and award of attorneys' fees for trial, we do not reach these arguments because we find that defendants' post-judgment motion for an award of attorneys' fees was improperly characterized as a Fed.R.Civ.P. 59(e) motion to alter or amend the judgment and that, therefore, the operation of Fed.R.App.P. 4(a)(4) was never triggered. The Supreme Court has recently held, in *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), that a post-judgment motion for an award of attorneys' fees under section 1988 is not cognizable under Fed.R.Civ.P. 59(e). In *White,* the class-action plaintiffs brought suit against the New Hampshire Department of Employment Security (NHDES) under section 1983. After judgment for the plaintiffs and pending an appeal by NHDES, the parties signed a settlement agreement which was subsequently approved by the district court.

More than four months after the entry of final judgment, the plaintiffs filed a motion requesting an award of attorneys' fees under section 1988. The district court granted plaintiffs' motion. The court of appeals reversed the district court's award of attorneys' fees, holding that the plaintiffs' post-judgment motion for attorneys' fees constituted a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e) which was not brought within that rule's ten-day time limit. The Supreme Court held that only reconsideration of matters properly encompassed in a decision on the merits is cognizable under Rule 59(e), and that a request for attorneys' fees raises legal issues collateral to the main cause of action; thus, it raises issues to which Rule 59(e) was never intended to apply. In so holding, the Court relied upon our decision in *Knighton v. Watkins,* 616 F.2d 795 (5th Cir.1980), where we said:

> [A] motion for attorney's fees is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks what is due because of the judgment. It is, therefore, not governed by the provisions of Rule 59(e).

616 F.2d at 797.

It might be argued that the present case is distinguishable from both *White* and

---

**3.** The notes of the Advisory Committee to Rule 4 state, in part:

> The proposed amended rule expands to some extent the standard for the grant of an extension of time. The present rule requires a "showing of excusable neglect." While this was an appropriate standard in cases in which the motion is made after the time for

filing the notice of appeal has run, and remains so, it has never fit exactly the situation in which the appellant seeks an extension before the expiration of the initial time. In such a case "good cause," which is the standard that is applied in the granting of other extensions of time under Rule 26(b) seems to be more appropriate.

*Knighton* in that the latter cases involved final judgments which did not deal at all with the question of attorneys' fees, whereas in this case the original judgment of the district court *did* contain an award of attorneys' fees for the trial; thus, the subsequent award of attorneys' fees for the appeal might be seen as altering or amending the original award of attorneys' fees which was part of the original judgment, thereby placing the motion within the ambit of Fed. R.Civ.P. 59(e). We do not find this distinction valid and are not persuaded to deviate from the teachings of *White* and *Knighton* in this case. These cases clearly establish that the question of attorneys' fees is a collateral issue. If an award of attorneys' fees is collateral to the judgment on the merits, then the time at which they are awarded is immaterial; whether awarded at the same time judgment is entered or four months later, they are still collateral to the main cause of action. Therefore, even if the defendants' post-judgment motion could be seen as altering the original award of attorneys' fees, that would not prevent Campbell from proceeding with an appeal of the judgment on the merits.

We do not, however, think that the defendants' motion goes even that far; the defendants' motion was collateral both to the judgment and the award of attorneys' fees for trial. First, the granting of attorneys' fees for appeal did not in any way alter or amend the amount previously awarded for trial. Second, the award is contingent upon the defendants being the successful party on appeal; therefore, it is possible that the defendants could receive nothing from the grant of their motion. Finally, motions for attorneys' fees for appeal are usually filed and granted after the appeal has been exhausted. This long-established practice demonstrates the collateral nature of such a motion; if this question were not collateral, the disposition on appeal would foreclose the issue from being subsequently raised. Therefore, we find that the defendants' post-judgment motion for attorneys' fees for appeal was not cognizable under Rule 59(e). Although addressed by all parties and the district court

as a Rule 59(e) motion, the motion raised issues collateral to both the judgment on the merits and the award of attorneys' fees for trial. Thus, Fed.R.App.P. 4(a)(4) was never triggered and Campbell's original notice of appeal remains operative as to the judgment on the merits and the award of attorneys' fees for trial.

It remains to be determined, however, whether the district court abused its discretion in granting Campbell's motion for extension of time for filing his notice of appeal to the extent that it affects the award of attorneys' fees for appeal. We find that the district court did abuse its discretion; Campbell's subsequent notice of appeal was, therefore, untimely and we decline to review the award of attorneys' fees for appeal.

A district court may extend the time for filing an appeal upon a showing that the failure to file a timely appeal was the result of excusable neglect. *Wansor v. George Hantscho Co.,* 570 F.2d at 1206; *see also* Advisory Committee note to Rule 4, *supra,* note 3 (stating that excusable neglect is proper standard in which motion is made after the time for filing the notice of appeal has run). Campbell's sole excuse for failing to timely file was that he was unaware of the necessity to refile. At the time the district court granted the defendants' motion, Campbell was faced with two possible alternatives: either the district court's grant of defendants' motion was a Rule 59(e) order or it was a collateral appealable order. In either case the rules of civil and appellate procedure clearly provide that Campbell was required to file a notice of appeal within thirty days. We are disinclined to hold that a failure to read the rules of civil and appellate procedure can constitute excusable neglect. "[S]uch a proposition would make the requirement of timely filing almost undeterminable." *Wansor,* 570 F.2d at 1207. Therefore, we find that Campbell's failure to timely file was not excusable neglect and thus, that the district court abused its discretion in granting an extension of time. We, accord-

ingly, refuse to review the district court's grant of attorneys' fees for appeal.

## III. MERITS OF CAMPBELL'S APPEAL.

Campbell raises three arguments on appeal: (1) that the district court erred in granting the defendants' motion for a directed verdict; (2) that the district court erred in excluding certain impeachment evidence offered by Campbell's counsel at trial; and (3) that the district court erred in awarding the defendants attorneys' fees for trial. Because of our disposition of the first of these issues, we find it unnecessary to address the final two.

▋ The propriety of a district court's grant of a directed verdict is measured by the standard set by this court in *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc):

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.

On appeal, the court is to view all the evidence with all reasonable inferences most favorable to the nonmoving party. *Callon Petroleum Co. v. Big Chief Drilling Co.,* 548 F.2d 1174, 1176 (5th Cir.1977); *Worthington Corp. v. Consolidated Aluminum Corp.,* 544 F.2d 227, 230 (5th Cir.1976). Thus, the question before this court on appeal is whether there was sufficient evidence concerning Campbell's section 1983 action to present a jury question.

▋ In proving his section 1983 action against the City Council members in their individual capacities, Campbell must show that they acted, while discharging their official responsibilities, to violate Campbell's constitutional rights and that they knew or should have known, as measured by an objective reasonableness standard, that their actions would have that effect. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975); *Hart v. Walker,* 720 F.2d 1436 at 1440–41 (5th Cir.1983); *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir.1980). In proving his section 1983 claim against the city and the council members in their official capacities,[4] Campbell must show that he was denied municipal services on account of race and that his denial was the result of an official policy or custom of the City of Center. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978); *Familias Unidas v. Briscoe, supra,* at 403.

▋ Campbell testified that Tim Taylor, a city employee, told him that "[the city] could put your sewer down there, but [then] everyone of these black people down here would want sewer and they're not going to get it." Record Vol. 2 at 33. This is evidence that the city was denying Campbell municipal services on account of race. Moreover, it is at least a permissible inference from this testimony that this edict had come from city officials, as part of an official policy or custom adopted by those city officials. Campbell also presented additional evidence concerning an official policy or custom. He testified that, in 1975, he had approached the City Council concerning water and sewer service for his property, but was told "people all over the city want

---

4. Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent. *Monell v. New York City Department of Social Services,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55; *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Familias Unidas v. Briscoe,* 619 F.2d at 403. Thus, damages may be awarded against a defendant in his official capacity if they would be available against the governmental entity itself. *Id.*

something, and down where you're at, you're not going to get anything."[5] Record Vol. 2 at 18.

Under the standard of *Boeing Co. v. Shipman, supra,* Campbell's section 1983 action should have been submitted to the jury. If a jury were to believe Campbell's testimony, they could reasonably reach a verdict in his favor. Although much evidence in favor of the defendants was developed at trial, the question confronting the court is not whether the court as a trier of fact would decide the issues in favor of the defendants, but whether there was sufficient evidence in support of Campbell's claims to require the case to be submitted to a jury for determination. We hold that there was.

We are particularly concerned in that it appears that the district court was necessarily making credibility determinations. It is impossible, in this case, to reach a conclusion concerning the merits without making credibility determinations. Campbell presented testimony that, if accepted, would show that he was being denied municipal services on account of race and that the City of Center had an official policy or custom to deny equal access to municipal services to the predominantly black residents of "the Quarters." The defendants presented testimony that Campbell was denied municipal services, not because of his race, but because he refused to pay the appropriate fees. Reaching a determination of the merits would, here, necessitate a finding that the testimony of one side or the other was not credible. As we held in *Boeing, supra,* a directed verdict is particularly inappropriate in cases in which credibility determinations are necessary, 411 F.2d at 375 ("it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses."). Accordingly, we reverse the judgment of the district court and remand the case for trial.

Because of our disposition of Campbell's appeal of the district court's directed verdict, we need not address the other grounds for reversal which he urges. The judgment of the district court is REVERSED and REMANDED.

---

**5.** Because this incident did not occur within the applicable statute of limitations period, this lawsuit does not encompass this denial of municipal services. However, this evidence may serve as evidence of an official policy or custom of the City of Center to deny municipal services to black residents.