818 F.2d 1227
 8 Fed.R.Serv.3d 53
 Elbert A. COBB and Gail Smith Cobb, Husband and Wife,
Plaintiffs-Appellants,
v.
Beauregard H. MILLER, Jr., Individually and as the Chief of
Police for the City of Gretna Police Department,
et al., Defendants-Appellees,
Patrolman Richard Panuski, et al., Defendants-Appellees.
WESTERN WORLD INSURANCE COMPANY, et al., Plaintiffs-Appellants,
v.
Elbert A. COBB, et al., Defendants-Appellees.
 Nos. 86-3105, 86-3635.
 United States Court of Appeals,
Fifth Circuit.
 June 15, 1987.
 
 James Carter, Porteous, Hainkel, Johnson & Sarpy, New Orleans, La., for Western World & Panuski.
 Robert J. Caluda, New Orleans, La., for Cobb.
 Lawrence J. Centola, Jr., George J. Nalley, Jr., New Orleans, La., for Forum Ins. Co.
 Randall A. Fish, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Paul B. Deal, Frilot, Michael T. Cali, New Orleans, La., for Caluda.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, WILLIAMS and HILL, Circuit Judges.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 This consolidated appeal involves three issues: whether the district court erred in calculating the amount of attorney's fees that plaintiff Elbert Cobb was entitled to under 42 U.S.C. Sec. 1988; whether the issue of attorney's fees under section 1988 is a collateral issue for purposes of finality and appealability; and whether the district court erred in concluding that Western World Insurance Company did not have an action for wrongful execution under Louisiana law.
 
 
 2
 In summary, we conclude that the district court erroneously reduced the amount of attorney's fees awarded to Cobb; that the issue of attorney's fees under 42 U.S.C. Sec. 1988 is a collateral issue and appealable; and that the district court correctly granted summary judgment against Western World's wrongful execution claim.
 
 I.
 
 3
 Elbert A. Cobb and his wife, Gail Smith Cobb, filed a lawsuit in 1980 against Beauregard H. Miller, Arthur Lawson, Jr., Richard Panuski, as well as their insurers, Western World Insurance Company (Western World) and Forum Insurance Company (Forum). They were represented by Robert J. Caluda. The basis of the lawsuits were civil rights violations under 42 U.S.C. Secs. 1981, 1983, 1985, and 1986 that allegedly occurred during the arrest and conviction of Mr. Cobb for being a felon in possession of a firearm. The Cobbs also sought punitive damages as well as attorney's fees and costs under 42 U.S.C. Sec. 1988.
 
 
 4
 On February 14, 1985, after trial by jury, a judgment was rendered in federal court in favor of Mr. Cobb against Western World and Panuski, "jointly, severally, and in solido " in the sum of $12,300.[1] The jury also found that none of the other defendants had violated Cobb's civil rights and that punitive damages were not appropriate against Panuski. The judgment entered by the district court reserved the issue of attorney's fees for determination at a later time.
 
 
 5
 On February 22 Western World made a motion for a new trial and, alternatively, a motion to alter or amend the judgment. On March 15 the district court granted Western World's motion for a new trial for "the sole purpose of amending and correcting" its judgment of February 14. The court amended the judgment by adding Forum as an additional party against whom Cobb could recover his damages. The amended judgment again stated that Cobb's claim for attorney's fees was reserved for determination at a later time. No party filed a notice of appeal from the March 15 judgment.
 
 
 6
 On March 18 the district court referred the issue of attorney's fees to a magistrate. On December 12 the magistrate recommended that Cobb be awarded attorney's fees pursuant to 42 U.S.C. Sec. 1988 in the amount of $7,902.90 and costs in the amount of $8,958.26. Cobb had sought $49,788.90 in attorney's fees and $8,958.26 in costs. Over Cobb's objections, the district court adopted the magistrate's report and recommendation. Defendants Western World and Panuski appealed the judgment of attorney's fees. Cobb filed a cross-appeal claiming that the district court abused its discretion in reducing his request for attorney's fees. Cobb also argues in his cross-appeal that the district court improperly limited the testimony of his expert witness at trial. Subsequently, Western World and Panuski made a motion to dismiss their appeal, which was granted.
 
 
 7
 On June 28, 1985, while the attorney's fees issue was under the magistrate's consideration, Caluda filed a petition in Louisiana state court in order to commence execution of the March 15 judgment rendered against Western World and Forum. A Louisiana state district court judge issued a writ of fieri facias which directed the sheriff to seize the insurance bonds of Western World and Forum which were in the possession of the Louisiana insurance commissioner. The form writ that Caluda filed with his petition stated that the federal court judgment of February 14, 1985, was the basis for the writ of fieri facias. The bonds were apparently seized by the sheriff on July 19.[2] On July 19 Western World and Forum filed a motion in federal district court to stay execution of "a non-final judgment." The district court granted the motion on July 19 and enjoined the sheriff from seizing any property of Western World or Forum. On July 23, the state district judge rescinded his order of July 8 and ordered the sheriff to return the bonds to Western World and Forum.
 
 
 8
 On November 7, Western World and two of its employees filed a federal suit against Caluda and Cobb seeking damages for the alleged wrongful seizure of the insurance bond of Western World. Forum was not a party to the suit filed by Western World. Western World argued that the federal judgment which Caluda sought to execute in state court was not final because attorney's fees had not yet been awarded by the district court. It also argued that it was entitled to damages for wrongful execution since Caluda relied on the non-final judgment of February 14 when he filed his petition for a writ of fieri facias. Caluda and Cobb filed a motion for summary judgment claiming that the judgment of February 14 as amended on March 15 was final and that therefore there was no wrongful seizure of Western World's insurance bond.
 
 
 9
 On August 8, 1986, the district court granted Caluda's and Cobb's motion for summary judgment. The court held that the March 15 judgment was final. The court reasoned that although the defendants had cited the non-final February 14 judgment in their petition for a writ of fieri facias, this was irrelevant since a final judgment was rendered on March 15 which also held Western World liable for the identical amount. The court concluded that Western World could not show any harm or damages as a result of Caluda's actions and therefore did not have a claim for wrongful execution. Western World appeals from this judgment.[3]
 
 II.
 
 10
 The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988, allows courts to award reasonable attorney's fees to "prevailing parties" in an action to enforce provisions of the federal civil rights laws.[4] In this circuit the test for prevailing party status is whether the plaintiff prevailed on the central issue by acquiring the primary relief sought. Falcon v. General Telephone Co., 815 F.2d 317, 322-23 (5th Cir.1987); Commonwealth Oil Refining Co., Inc. v. EEOC, 720 F.2d 1383, 1385 (5th Cir.1983); Iranian Students Association v. Edwards, 604 F.2d 352, 353 (5th Cir.1979). For purposes of No. 86-3105, Western World does not dispute that Cobb is the prevailing party and is entitled to attorney's fees.
 
 
 11
 In Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), we established twelve factors which district courts must consider in deciding the amount of attorney's fees to award to a prevailing plaintiff.[5] The twelve factors are considered within the framework outlined in Copper Liquor, Inc. v. Adolph Coors, 684 F.2d 1087 (5th Cir.1982). Under Copper Liquor the district court should: (1) ascertain the nature and extent of the services supplied by the attorney; (2) value the services according to the customary fee and quality of the legal work; and (3) adjust the compensation on the basis of the other Johnson factors that may be of significance. 684 F.2d at 1092. The product of factors (1) and (2) is called the "lodestar." See Nisby v. Commissioners Court, 798 F.2d 134, 136-37 (5th Cir.1986). While specific findings on individual Johnson factors involve fact determinations reviewable under the clearly erroneous standard, Brantley v. Surles, 804 F.2d 321, 327 (5th Cir.1986), the ultimate award of attorney's fees is reviewed for abuse of discretion. Id. (citing Johnson, 488 F.2d at 717).
 
 
 12
 Subsequent to our opinion in Johnson, the Supreme Court held that an award of attorney's fees under section 1988 should normally be based on multiplying a reasonable number of hours worked by a reasonable rate of compensation. Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891, 895 (1984); Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939-40, 76 L.Ed.2d 40, 50 (1983). The Court noted, however, that the calculation of the lodestar does not end the inquiry and that other considerations may persuade the district court to increase or decrease a fee award. Hensley, 461 U.S. at 434, 103 S.Ct. at 1940, 76 L.Ed.2d at 51.
 
 
 13
 After Blum and Hensley, the question arose whether district courts still had to follow the Johnson factors. In Nisby a panel of this court held that Blum and Hensley did not abrogate the requirement that district courts must consider the twelve factors established in Johnson. 798 F.2d at 137. Nisby noted that the Congressional reports relied upon by the Supreme Court in Blum and Hensley expressly approved the use of the Johnson factors. Id. However, after Blum and Hensley we have not always followed the framework outlined in Johnson consistently. In Nisby, for example, the court reversed the attorney's fees award because the district court did not specifically evaluate each of the Johnson factors. However, in Brantley v. Surles, 804 F.2d 321 (5th Cir.1986), another panel of this court upheld a fee award where the district court did not evaluate each Johnson factor because the overall award "me[t] the Supreme Court's guidelines in Blum and Hensley." Id. at 326.[6] Further, in a case decided before Blum and Hensley, we stated that if there is "some assurance that the court has arrived at a just compensation based upon appropriate standards ..., it will not always be necessary for a district court to address each of the twelve [Johnson ] factors in explaining the considerations affecting its decision." Davis v. Fletcher, 598 F.2d 469, 471 (5th Cir.1979). Thus, while our cases indicate that the district court must utilize the Johnson factors in its analysis on the issue of attorney's fees, we are not required to reverse summarily a district court finding which omits discussion of one of the Johnson factors so long as the record clearly indicates that the district court has utilized the Johnson framework as the basis of its analysis, has not proceeded in a summary fashion, and has arrived at an amount that can be said to be just compensation.
 
 
 14
 The magistrate's opinion, which the district court adopted, made findings in relation to many but not all of the Johnson factors. Cobb sought compensation for 395.15 hours of work. He sought an hourly rate of $90 per hour multiplied by a 40 percent contingency factor for a total of $126 per hour. The magistrate decided that the number of hours requested was excessive due to repetition, unnecessary expenditure of time, and the difficulty of the issues involved. The magistrate concluded that the appropriate number of compensable hours was 263.43. The magistrate also declined to apply the requested contingency factor in its determination of a reasonable hourly rate because Cobb failed to introduce evidence to justify an upward adjustment. In arriving at a reasonable hourly rate, the magistrate also "dr[ew] on his own experience gained as a result of over twenty-five years of service at the bar."[7] After considering the evidence and the Johnson factors, the magistrate found that $90 was a reasonable hourly rate. Thus, under the magistrate's calculations the appropriate lodestar figure was $23,708.70 (263.43 hours times $90 per hour).[8] The magistrate then used a combined mathematical and proportionality approach in reducing this figure by two-thirds: since Cobb recovered only nominal damages and was successful as to only one of the three defendants, the magistrate reduced the lodestar figure by two-thirds, for a net result of $7,902.90.
 
 
 15
 Cobb contends that the magistrate erred in reducing the number of compensable hours. Our examination of the record, however, convinces us that the magistrate's conclusions as to the number of compensable hours and the appropriate hourly rate is not clearly erroneous. We believe the magistrate's calculation of the lodestar amount is supported by the evidence and reflects a careful examination of the relevant Johnson factors.
 
 
 16
 Cobb also contends that the magistrate erred when he reduced the lodestar by two-thirds because of the fact that Cobb was awarded comparatively nominal damages by the jury and because he was successful as to only one of three defendants. For the reasons we explain below, we agree with Cobb that the magistrate abused his discretion in reducing the lodestar amount by two-thirds.
 
 
 17
 The purpose of section 1988 is to ensure " 'effective access to the judicial process' for persons with civil rights grievances." Hensley, 461 U.S. at 429, 103 S.Ct. at 1937, 76 L.Ed.2d at 48 (quoting H.R.Rep. No. 94-1558, p. 1 (1976) reprinted in 1976 U.S.Code Cong. & Admin.News 5908). The legislative history of section 1988 indicates a strong Congressional intent to encourage private enforcement of the nation's civil rights statutes. See S.Rep. No. 1011, 94th Cong., 2d Sess. 2, 6 (1976) reprinted in 1976 U.S. Code Cong. & Admin.News. 5908, 5910, 5913. Consistent with the policy of section 1988, an award of $50,000 in attorney's fees has been upheld even where only one dollar in nominal damages had been awarded. McCann v. Coughlin, 698 F.2d 112, 128-29 (2d Cir.1983).
 
 
 18
 In reducing the lodestar amount, the magistrate relied on the Supreme Court's statement in Hensley that "the most critical factor [in determining the amount of attorney's fees] is the degree of success obtained." 461 U.S. at 436, 103 S.Ct. at 1941, 76 L.Ed.2d at 52. Cobb contends that Hensley is inapposite because it dealt with the issue of a plaintiff obtaining success on only some of the claims he brought rather than the case where plaintiff recovers from only some of the defendants. Cobb is correct; the Court in Hensley did not specifically address the situation in which a plaintiff brings a claim against several defendants but obtains relief from only some of them. In Hensley the Supreme Court recognized that in many cases claims are factually and legally related and cannot be easily segregated. The Court stated that a fee award should not necessarily be reduced simply because the plaintiff failed to prevail on every contention in the lawsuit. Hensley, 461 U.S. at 435, 103 S.Ct. at 1940, 76 L.Ed.2d at 51-52. The Court also rejected the use of a mathematical approach in determining fee awards by comparing the total number of issues in the case with those actually prevailed upon. Id. at n. 11.
 
 
 19
 We have been able to find only one case involving the issue of attorney's fees which directly addresses the situation where a plaintiff succeeds on a claim against only some of the defendants against whom the claim is brought. In Mary Beth G. v. City of Chicago, 723 F.2d 1263 (7th Cir.1983), the Seventh Circuit interpreted Hensley as suggesting that
 
 
 20
 all time spent in pursuit of relief for the same illegal conduct should be considered in awarding attorney's fees once the relief sought is obtained, regardless whether the plaintiff has succeeded in obtaining the relief from only some and not all of the defendants named in connection with the conduct.
 
 
 21
 723 F.2d at 1280-81. The court reasoned that it would be illogical to define compensable claims for relief in terms of defendants, because once a plaintiff succeeds against one defendant, he will have achieved relief despite the fact that he did not recover against other defendants. Id. at 1281. The court stated that so long as the defendants from whom the plaintiff did not obtain relief were not named frivolously, the total time expended on the claim should be counted. Id.[9]
 
 
 22
 In the instant case, the magistrate specifically held that Cobb's claims could not be divided on a claim-by-claim basis because his claims were interrelated and all stemmed from the unlawful use of force by Panuski and others in regard to the arrest of Cobb and his subsequent detention. We find no error in this determination. Similarly, the claims against the different defendants do not arise from a course of conduct that is easily differentiated on the basis of each defendant. We agree with the reasoning of Mary Beth G. and conclude that the magistrate erred when he reduced the lodestar amount by two-thirds because Cobb prevailed against only one of the three defendants.[10]
 
 
 23
 The only other reason used by the magistrate to reduce the attorney's fees award given to Cobb was the nominal damage award he received from the jury. Cobb also asserts that this was error. In support of his argument, he cites Basiardanes v. City of Galveston, 682 F.2d 1203 (5th Cir.1982). Basiardanes, however, merely states that the fact that only nominal damages are awarded does not preclude an award of attorney's fees; nothing in the opinion expresses any view as to the relationship of the damages awarded to the amount of attorney's fees awarded. See Basiardanes, 682 F.2d at 1220.
 
 
 24
 In City of Riverside v. Rivera, --- U.S. ----, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986), the Supreme Court provided some guidance on this issue. Riverside involved the question of whether a district court abused its discretion in awarding over $245,000 in attorney's fees where the prevailing plaintiff had recovered only $33,350 in damages. The Court, in a plurality opinion, affirmed the judgment of the district court. Five justices explicitly rejected the view that the legislative history of section 1988 indicates that Congress intended that an award of attorney's fees had to be proportional to the amount of damages recovered by a plaintiff. See --- U.S. at ----, 106 S.Ct. at 2694, 91 L.Ed.2d at 479 (opinion of Brennan, J., joined by Marshall, Blackmun and Stevens, JJ.); --- U.S. at ----, 106 S.Ct. at 2700, 91 L.Ed.2d at 486 (Powell, J., concurring in the judgment). See also Brantley, 804 F.2d at 326-27 (upholding an attorney's fee award nearly twice as large as the damages recovered, citing Riverside ); Basiardanes, 682 F.2d at 1220 ("[A]n attorney's fees award may be supported by an award of nominal damages since the successful claim serves to vindicate constitutional rights."). However, the plurality opinion also indicated that the amount of damages a plaintiff recovers is relevant to the amount of attorney's fees to be awarded under section 1988. --- U.S. at ----, 106 S.Ct. at 2694, 91 L.Ed.2d at 479 (citing Johnson ). Thus, while Riverside indicates that the magistrate could consider the low damage award that Cobb received in setting the amount of attorney's fees, at the same time it rejects a rule requiring proportionality between section 1988 attorney's fees and the amount of damages awarded to a litigant.
 
 
 25
 We have not addressed the extent to which a low damage award should be considered by a district court in determining the amount of attorney's fees. An examination of other circuits reveals differing approaches. In DiFilippo v. Morizio, 759 F.2d 231 (2d Cir.1985), the Second Circuit held that the district court erred in reducing the lodestar figure by fifty percent because the damage award was low and the case was straightforward and not novel. The court held that "a reduction [in attorney's fees] made on the grounds of a low award [is] error unless the size of the award is the result of the quality of representation." 759 F.2d at 235. The court also stated that the imposition of a negative multiplier when the damage award is low is error "if the award is typical of awards in the same type of case." Id. at 236.[11]
 
 
 26
 The Seventh Circuit, however, has stated that the nominal nature of damages can properly be considered by the district court in determining the amount of a fee award, although a nominal damage award does not require a nominal fee award. Lynch v. City of Milwaukee, 747 F.2d 423, 428-29 (7th Cir.1984). The court in Lynch specifically noted that "if the only relief sought in the underlying suit were money damages, the size of the damage award would be relevant in determining the amount of attorney fees [under the eighth Johnson factor]." Id. at 428 n. 5. This statement in Lynch that the amount of damages can be considered in determining attorney's fees is also consistent with the plurality's statement in Riverside.
 
 
 27
 While the Supreme Court's apparent approval in Riverside of both Lynch and DiFilippo appears to be inconsistent, we conclude that the teachings of these cases is that while the amount of damages awarded is one factor to be considered in setting the amount of attorney's fees, the district court must also carefully consider any other relevant Johnson factors. In the absence of other Johnson factors justifying a reduction in a fee award, a district court should not reduce the fee award solely because of a low damages award. Such an approach would lead to a proportionality requirement between the amount of attorney's fees and the amount of damages and was explicitly rejected by the Court in Riverside.
 
 
 28
 A case closely analogous to the instant case is Spano v. Simendinger, 613 F.Supp. 124 (S.D.N.Y.1985). The plaintiff in that case recovered against only one of several defendants and received a comparatively low damage award. The defendants argued that the fee award should reflect both of these facts. The district court rejected both arguments. Relying on Hensley, the court concluded that the plaintiff's claims against the other defendants and other theories of recovery all arose out of the same "common factual core" and that the time spent investigating one aspect of the case could not easily be separated from the time spent on the successful claim. See Spano, 613 F.Supp. at 125. The court, citing DiFilippo, also rejected the defendants' claim that the low damages award required a low attorney's fees award. Similarly, in this case, Cobb's claims against the defendants arise out of the same course of conduct and are not easily separated on the basis of each claim or each defendant.
 
 
 29
 We therefore conclude that the two reasons used by the magistrate in reducing the lodestar figure by two-thirds are inconsistent with the Supreme Court's reasonings in Hensley, Blum, and Riverside. After careful examination of the record, we conclude that the lodestar figure is a fair and reasonable measure of attorney's fees in this case. Accordingly, we reverse the district court on the issue of attorney's fees and render judgment for Cobb in the lodestar amount of $23,708.70.
 
 III.
 
 30
 Cobb also contends the district court erred by not allowing his expert witness, Dr. Kirkham, to testify at trial about matters that were not contained in his written report. Before reaching the merits of this issue, however, a preliminary question must be addressed. The district court entered its amended judgment on March 15, 1985. No notice of appeal was filed. Over ten months later, on January 23, 1986, the district court entered its order adopting the magistrate's report and recommendation concerning the award of attorney's fees. On February 4, 1986, Cobb filed a notice of appeal. Thus, the question arises whether the February 4 notice of appeal is timely with regard to Cobb's appeal from the March 15, 1985, judgment on the merits. Although neither party has raised this issue in No. 86-3105, we are required to examine the basis for our jurisdiction sua sponte if necessary. Koke v. Phillips Petroleum Co., 730 F.2d 211, 214 (5th Cir.1984).
 
 
 31
 The question of the finality and appealability of orders prior to a ruling on attorney's fees has proved to be a difficult one in our circuit due to the case-by-case approach we use. The standard for determining whether the March 15 judgment was a final judgment is set forth in Holmes v. J. Ray McDermott & Co., Inc., 682 F.2d 1143 (5th Cir.1982), cert. denied, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). In Holmes we held:When attorney's fees are similar to costs ... or collateral to an action ... a lack of determination as to the amount does not preclude the issuance of a final appealable judgment on the merits. When, however, the attorney's fees are an integral part of the merits of the case and the scope of relief, they cannot be characterized as costs or as collateral and their determination is a part of any final, appealable judgment.
 
 
 32
 Id. at 1146 (citations omitted). Applying this standard, the Holmes court concluded that a request for attorney's fees in a maritime action for arbitrary and willful failure to pay maintenance and cure was similar to an element of damages where the attorney's fees were awarded because of the defendant's conduct and was not separable from the merits. Id. at 1147.
 
 
 33
 The analysis in Holmes was based on the Supreme Court's decision in White v. New Hampshire Department of Employment Security, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). In White the Court held that a post-judgment motion to award attorney's fees under 42 U.S.C. Sec. 1988 was not subject to the 10-day timeliness standard of Fed.R.Civ.P. 59(e). The Court reasoned that an award of attorney's fees under section 1988 was not integral to the main cause of action, but was instead a collateral matter. 455 U.S. at 451-52, 102 S.Ct. at 1166, 71 L.Ed.2d at 331. The Court thus agreed with our decision in Knighton v. Watkins, 616 F.2d 795, 797 (5th Cir.1980). The Court in White also noted:
 
 
 34
 There is implicit support for this view in decisions of the Courts of Appeals holding that decisions on the merits may be "final" and "appealable" prior to the entry of a fee award. If a merits judgment is final and appealable prior to the entry of a fee award, then the remaining fee issue must be "collateral" to the decision on the merits. Conversely, the collateral character of the fee issue establishes that an outstanding fee question does not bar recognition of a merits judgment as "final" and "appealable."
 
 
 35
 White, 455 U.S. at 452 n. 14, 102 S.Ct. at 1167 n. 14, 71 L.Ed.2d at 331 n. 14 (citations omitted).
 
 
 36
 In Knighton the court, relying on the wording of section 1988, noted that attorney's fees are treated as costs. 616 F.2d at 798. Knighton, however, did not address the question of finality presented by the instant case. Thus, although the dicta in Knighton would appear to indicate that section 1988 attorney's fees are a collateral matter, it is not dispositive as to how attorney's fees under section 1988 should be classified under Holmes.[12]
 
 
 37
 Other Fifth Circuit cases state in other contexts that the issue of attorney's fees under section 1988 is a collateral issue that does not affect the finality and appealability of a judgment on the merits. In Campbell v. Bowlin, 724 F.2d 484 (5th Cir.1984) (per curiam), the issue was whether a motion for attorney's fees under section 1988 for fees incurred on appeal, filed 10 days after the judgment, was properly characterized as a rule 59(e) motion so as to delay the running of the time for appeal under Fed.R.App.P. 4(a)(4) where the judgment on the merits had included an award of attorney's fees for the trial. Citing White, the court held that the defendants' post-judgment motion for attorney's fees was improperly characterized as a rule 59(e) motion and therefore Fed.R.App.P. 4(a)(4) had never been triggered. 724 F.2d at 487-88. The court stated that "[White and Knighton ] clearly establish that the question of attorneys' fees is a collateral issue." Campbell, 724 F.2d at 488. The Campbell court refused to distinguish White and Knighton on the basis that the judgment on the merits in Campbell contained a fee award and thus the grant of the motion could be seen as altering the original award. Thus, the court in Campbell held that a request for attorney's fees under section 1988 for fees incurred on appeal is a collateral issue. See also Cruz v. Hauck, 762 F.2d 1230 (5th Cir.1985) (supplemental request for fees under section 1988 is collateral issue).[13] Cf. Bilmar Drilling, Inc. v. IFG Leasing Co., 795 F.2d 1194 (5th Cir.1986) (attorney's fees under 28 U.S.C. Sec. 2202 are collateral); Jackson Marine Corp. v. Harvey Barge Repair, 794 F.2d 989 (5th Cir.1986) (attorney's fees under Fed.R.Civ.P. 11 and 28 U.S.C. Sec. 1927 are collateral). Campbell, however, did not mention Holmes or attempt to apply its framework.
 
 
 38
 The Eleventh Circuit, which follows the standard established in Holmes, has decided the issue involved in this case. In McQurter v. City of Atlanta, 724 F.2d 881 (11th Cir.1984) (per curiam), the court held that the district court's order in a section 1983 action which resolved all issues except the award of attorney's fees under section 1988 was final and appealable, and the city's failure to file a notice of appeal from the order within 30 days warranted the dismissal of the appeal as untimely. Id. at 882.
 
 
 39
 In light of our analysis in cases such as Campbell and Knighton, we agree with the conclusion of the McQurter court and hold that attorney's fees under section 1988 in this case are a collateral issue under Holmes. Since Cobb did not file a timely notice of appeal from the district court's March 15, 1985, judgment on the merits, he cannot appeal the district court's ruling in regard to the testimony of his expert witness. The notice of appeal filed by Cobb on February 4, 1986, only preserved his appeal in regard to the district court's award of attorney's fees. Consequently, we dismiss this portion of Cobb's appeal.
 
 
 40
 We now turn to the issue of whether the district court erred in granting summary judgment against Western World on its claim for wrongful execution.
 
 IV.
 
 41
 Western World[14] makes two arguments in asserting that the district court erred in granting summary judgment against it. First, Western World argues that the district court erred when it stated that it made no difference that Cobb cited the February 14 judgment in his application for a writ of fieri facias, instead of the March 15 judgment, since Western World could show no harm or damages resulting from the improper citing of the February 14 judgment. Second, Western World argues that the district court erroneously determined that the March 15 judgment was final when the court had not yet ruled on the issue of attorney's fees under section 1988. We believe that both of these arguments lack merit.
 
 
 42
 There is no question that the February 14 judgment was not a final judgment. On February 22 Western World timely filed a motion for new trial and, alternatively, a motion to alter or amend the judgment under Fed.R.Civ.P. 59(e). On March 15 the district court granted this motion and amended the judgment to include Forum as a defendant who was liable to Cobb. Fed.R.App.P. 4(a)(4)(iii) and (iv) state that a timely rule 59(e) motion delays the running of time for a notice of appeal until the district court rules on the motion. Furthermore, any notice of appeal filed before the disposition of the motion has no effect; a new notice of appeal must be filed after the disposition of the motion. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) (per curiam). Consequently, it is clear that Western World's rule 59(e) motion made the February 14 judgment non-final. 11 C. Wright & A. Miller, Federal Practice & Procedure Sec. 2821, at 136 (1973).
 
 
 43
 It is equally clear, however, that the March 15 judgment is a final judgment. Western World's argument in No. 86-3635 centers on the contention that since the district court had not yet ruled on the issue of attorney's fees, the March 15 judgment was not final. The district court, after analyzing Holmes and White, held that the March 15 judgment was final. For the reasons stated in part III, supra, we conclude that the district court properly determined that the March 15 judgment was final.
 
 
 44
 The next question that must be addressed is whether the fact that Cobb cited the February 14 judgment rather than the March 15 judgment in his state application for a writ of fieri facias gives Western World a cause of action for wrongful execution. Title 28 U.S.C. Sec. 1962 provides, in part, that:
 
 
 45
 Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time.
 
 
 46
 Louisiana law requires that a judgment be valid and final before it will operate to create a lien. Board of Trustees v. All Taxpayers, 361 So.2d 292, 294 (La.Ct.App.1978); see also La.Code Civ.Proc.Ann. art. 2291 et seq. (West 1961) (describing writ of fieri facias); La.Code Civ.Proc.Ann. art. 1841 (West 1961) (defining final judgment). Under Louisiana law damages may be awarded for wrongful seizure pursuant to a writ of fieri facias. See, e.g., Coleman Oldsmobile, Inc. v. Cobb, 366 So.2d 994, 996 (La.Ct.App.1978); Moses v. American Security Bank of Villa Platte, 222 So.2d 899, 902 (La.Ct.App.1969).
 
 
 47
 In support of its contention that it has a cause of action for wrongful execution, Western World analogizes to cases involving executory proceedings under Louisiana law. An executory proceeding in Louisiana is an action in rem by the holder of a mortgage or privilege. See generally La.Code Civ.Proc.Ann. art. 2631 et seq. (West 1961). It is a civil law remedy that does not have a counterpart in common law. As described by the Louisiana Supreme Court in Buckner v. Carmack, 272 So.2d 326 (La.1973):
 
 
 48
 Its procedural bases are the debtor's confession of judgment before a notary public and two witnesses; supporting authentic evidence; and a determination by a judge that the submissions are adequate for the seizure and sale of the encumbered property to satisfy the debt.
 
 
 49
 Id. at 329. Because executory process is a unique and harsh remedy, Louisiana courts have strictly enforced all applicable requirements before a creditor can proceed with this remedy. E.g. Bank of St. Charles and Trust Co. v. Great Southern Coach Corp., 424 So.2d 462, 463 (La.Ct.App.1982).
 
 
 50
 The differences between executory process and a writ of fieri facias, however, weaken the analogy that Western World attempts to draw. Executory process does not involve court proceedings which result in a judgment on the merits. Rather, as La.Code Civ.Proc.Ann. art. 2631 states, it is used to effect the seizure and sale of property "without previous citation and judgment." A writ of fieri facias, on the other hand, attempts to execute a judgment which results from litigation between two parties. Consequently, the strict construction that Louisiana courts apply to executory process requirements may not be as applicable to writs of fieri facias.
 
 
 51
 We have not been able to find any case, nor have the parties cited any, which indicates how Louisiana courts would treat a situation where a party actually has a final judgment against the parties named in the writ of fieri facias but mistakenly cites to an earlier non-final judgment. Two considerations, however, lead us to conclude that the district court correctly granted summary judgment against Western World.
 
 
 52
 First, one of the concerns about writs of execution such as fieri facias is that the party whose property is to be seized has notice and an opportunity to be heard before seizure. Cf. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). In this case this concern has been satisfied. Both Western World and Forum were well aware of the March 15 judgment against them. Similarly, when Cobb filed his motion on June 28, 1985, to execute on the February 14 judgment, the March 15 judgment (which merely added Forum as a defendant liable to Cobb) was final and executable. The amount of the judgment against Western World was also identical in the two judgments. Consequently, there was no "surprise" to Western World that would concern Louisiana courts or raise constitutional concerns.
 
 
 53
 Second, the writ of fieri facias that was actually issued states that the judgment in favor of Cobb in federal district court was against Panuski, Western World and Forum. In contrast, the February 14 judgment cited by Caluda in his petition for the writ of fieri facias states that judgment was entered in favor of Forum and against Cobb. In addition, while the petition for the writ refers to the February 14 judgment, the actual writ issued by the state court refers to the correct federal court case but does not mention the February 14 date. Thus, it appears that the state court in Louisiana was aware of the March 15 amended judgment when it issued the writ of fieri facias in July 1985.
 
 
 54
 For these reasons, we hold that the district court properly ruled that Western World does not have a cause of action for wrongful execution under Louisiana law. Accordingly, we affirm its decision granting summary judgment against Western World.
 
 V.
 
 55
 In No. 86-3105, we REVERSE the judgment of the district court in regard to the amount of attorney's fees and RENDER judgment for attorney's fees in the amount of $23,708.70; we DISMISS Cobb's appeal of the district court's ruling in regard to the testimony of his expert witness.
 
 
 56
 In No. 86-3635, we AFFIRM the judgment of the district court granting summary judgment against Western World on its claim for wrongful execution.
 
 
 57
 No. 86-3105: REVERSED and RENDERED IN PART; DISMISSED IN PART.
 
 
 58
 No. 86-3635: AFFIRMED.
 
 
 
 [1]
 Before the jury reached its verdict, the claim of Mrs. Cobb was dismissed
 
 
 [2]
 It is unclear from the record exactly when the bonds were seized. There appears to be no argument, however, that the bonds actually were seized at some point by the sheriff of East Baton Rouge Parish
 
 
 [3]
 In No. 86-3105, Cobb appeals the amount of attorney's fees awarded to him and the district court's ruling in regard to the testimony of his expert witness. This appeal has been consolidated with No. 86-3635, in which Western World appeals the district court's ruling against it in its wrongful execution action
 
 
 [4]
 Title 42 U.S.C. Sec. 1988 provides that in federal civil rights actions "the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." A prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' " Hensley v. Eckerhart, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40, 48 (1984) (quoting S.Rep. No. 94-1011 p. 4 (1976) in turn quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 263 (1968)). See also Kirchberg v. Feenstra, 708 F.2d 991, 998 (5th Cir.1983)
 
 
 [5]
 The twelve factors are:
 (1) the time and labor required,
 (2) the novelty and difficulty of the questions,
 (3) the skill requisite to perform the legal service properly,
 (4) the preclusion of other employment by the attorney due to acceptance of the case,
 (5) the customary fee,
 (6) whether the fee is fixed or contingent,
 (7) time limitations imposed by the client or the circumstances,
 (8) the amount involved and the results obtained,
 (9) the experience, reputation, and ability of the attorneys,
 (10) the "undesirability" of the case,
 (11) the nature and length of the professional relationship with the client, and
 (12) awards in similar cases.
 Johnson, 488 F.2d at 717-19.
 
 
 [6]
 In Nisby one judge suggested that the court should reconsider whether the Johnson factors are still needed in light of Blum and Hensley. See Nisby, 798 F.2d at 137 (Hinojosa, District Judge, specially concurring). Another recent opinion has stated that our cases dealing with Johnson "are in disarray" and also noted that Johnson has been criticized by courts and scholars. Bhandari v. First National Bank of Commerce, 808 F.2d 1082, 1104 n. 50 (5th Cir.), reh'g en banc granted, 812 F.2d 936 (5th Cir.1987)
 
 
 [7]
 With all due respect, we note that the magistrate should not have considered his own experience since it is not one of the Johnson factors. As we discuss below, however, his findings on specific Johnson factors are sufficient to allow us to affirm his determination of the lodestar amount
 
 
 [8]
 The magistrate considered the Johnson factors in setting both the reasonable number of hours and the hourly fee. In Hensley the Supreme Court noted that many of the Johnson factors are "subsumed" in the initial calculation of reasonable hours and rates. 461 U.S. at 434 n. 9, 103 S.Ct. at 1940 n. 9, 76 L.Ed.2d at 51 n. 9. We have held that the Johnson factors can be considered in arriving at the lodestar as well as in determining whether to modify it. See Sims v. Jefferson Downs Racing Association, 778 F.2d 1068, 1084 (5th Cir.1985); see also Lynch v. City of Milwaukee, 747 F.2d 423, 426 n. 2 (7th Cir.1984). Thus, the magistrate did not err when he used the Johnson factors in the calculation of the lodestar
 
 
 [9]
 The defendants do not allege that any of them were named frivolously by Cobb in his complaint
 
 
 [10]
 We express no opinion on the propriety of reducing an attorney's fees award based upon the number of defendants liable where each defendant's course of conduct can be easily differentiated
 
 
 [11]
 The Supreme Court in Riverside cited DeFilippo as being in line with the majority view rejecting a rule of proportionality between section 1988 attorney's fees and the amount of damages awarded. See --- U.S. at ---- n. 8, 106 S.Ct. at 2695 n. 8, 91 L.Ed.2d at 481 n. 8. See also Ramos v. Lamm, 713 F.2d 546, 557 (10th Cir.1983) (rejecting the idea that the amount of attorney's fees should be reduced when damage award is small)
 
 
 [12]
 The difficulties that the distinctions in Holmes can create for litigants has been recognized. See Alcorn County v. U.S. Interstate Supplies, 731 F.2d 1160, 1165 n. 4 (5th Cir.1984). Most other circuits have adopted a rule that treats all requests for attorney's fees as collateral to the merits and as not precluding a final appealable judgment on the merits. See, e.g., Morgan v. Union Metal Manufacturing, 757 F.2d 792, 794-95 (6th Cir.1985); West v. Keve, 721 F.2d 91 (3d Cir.1983); Cox v. Flood, 683 F.2d 330, 331 (10th Cir.1982). This per se approach has also been endorsed by Professors Wright and Miller:
 [T]he great virtue of the rule is clarity. It will forestall any need to worry whether a judgment that fails to pass upon a demand for fees in the complaint is not final, in the way that judgments that fail to dispose of all requests for relief are not final. It will avoid any period of uncertainty as courts work through questions whether some grounds for recovering fees are less separable from the merits than the ground involved in this case.
 
 
 [15]
 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, Sec. 3915 at 268 (Supp.1986) (footnotes omitted)
 Although this approach may lead to some "piecemeal" appeals of merits and fee questions, district courts could control this by withholding entry of judgment on the merits until disposition of the attorney's fee claim. White, 455 U.S. at 452-53 & nn. 14, 16, 102 S.Ct. at 1167 & nn. 14, 16, 71 L.Ed.2d at 332-33 & nn. 14, 16. Despite the apparent benefits of this per se approach, however, the Holmes approach is binding precedent on us.
 
 
 [13]
 The court in both Holmes and Alcorn County also assumed in dicta that the issue of attorney's fees under section 1988 is a collateral issue. See Alcorn County, 731 F.2d at 1165; Holmes, 682 F.2d at 1147 n. 7
 
 
 [14]
 As indicated earlier, Forum is not a party to Western World's suit for wrongful execution