DENNIS, Circuit Judge,
concurring in part and dissenting in part:
I concur in sections I, II, and III.A-III.D of the majority opinion. However, I must respectfully dissent from section III.E and the vacating of the attorney’s fee award in section III.F.
Trader contends that the evidence was insufficient to support an award of punitive damages because Williams did not demonstrate that Trader’s actions were “reprehensible.” The Supreme Court and this circuit have recently rejected the theory that a level of egregiousness is necessary in awarding punitive damages under Title VII; all that is required to award punitive *489 damages is that the employer act with malice or reckless disregard of an employee’s protected rights. See Kolstad v. American Dental Assoc., 527 U.S. 526, 119 S.Ct. 2118, 2124, 144 L.Ed.2d 494 (1999); Deffenbaugh-Williams v. Wal-Mart Stores, Inc., 188 F.3d 278, 281-82 (5th Cir.1999). Under Kolstad, that Trader’s actions lacked reprehensibility or egregiousness does not preclude an award of punitive damages. Trader does not dispute that it was aware of the rights afforded Williams under Title VII and that there was sufficient evidence to support the jury’s finding that Haas acted with sufficient malice or reckless disregard to such rights to constitute a violation of those rights. Thus, there is sufficient evidence to support the jury’s award of punitive damages based on the behavior of Haas.
This is not the end of the punitive damages analysis, however. The Supreme Court in Kolstad held that liability cannot be imputed to the employer if (1) the discriminating employee was not a managerial employee acting in the scope of employment or (2) the employee acted contrary to the employer’s good-faith efforts to comply with Title VII. See Deffenbaugh-Williams, 188 F.3d at 282 (citing Kolstad, 119 S.Ct. at 2129).
It is somewhat difficult to discern Trader’s arguments with respect to the first defense; however, it appears that Trader contends that any discriminatory action by Haas in dismissing Williams cannot be imputed to Trader because Haas did not have the managerial authority to dismiss Williams. Trader asserts, and the majority agrees, that only the Executive Vice President in charge of Human Resources, Sunny Sonner, had that authority. Trader further contends that Williams makes no allegations that Sonner, the sole managerial agent for purposes of Kolstad, acted in a discriminatory manner and thus Trader cannot be held hable for punitive damages. It is true that for liability to be imputed to an employer, the offending agent must be employed in a managerial capacity. See Kolstad, 119 S.Ct. at 2128-30. However, as this court said in Deffenbaugh-Williams, “whether an agent is a manager is a ‘fact intensive’ inquiry” and that “ultimately, the ... jury will have to decide this issue on the particular facts of the case.” 188 F.3d at 285 (quoting Kolstad, 119 S.Ct. at 2128) (quoting L. SohlueteR & K. Redden, Punitive DaMages § 4.4(B)(2)(a)). Thus, the sole issue presented is whether the evidence points so strongly in favor of Trader that it is entitled to a judgment as a matter of law on the issue of whether Haas was a managerial agent of Trader.
In Deffenbaughr-Williams this court found that there was sufficient evidence to support a factual determination that an employee was a “managerial agent” in that he (1) had supervisory authority over the aggrieved employee, (2) terminated her on his own authority and (3) was in charge of six stores. 188 F.3d at 285. Trader contends that Haas is not a managerial agent, although he did have supervisory authority over Williams, because (1) Sonner, not Haas, actually terminated Williams and (2) Haas was only in charge of one branch office. Although in general only Sonner had final authority to terminate employees such as Williams, it is undisputed that Haas did have limited authority to discharge 'employees under his supervision for severe disruptive behavior, such as public drunkenness at work.[1] It is also undisputed that Haas told Williams that he had terminated her employment, that Williams did not receive any formal oral or written reprimand, and that Williams was escorted from the Trader office by security guards upon her termination. This evidence supports Williams’s contention that it was in actuality Haas who fired her under his limited emergency authority to *490 do so. Drawing all reasonable inferences in favor of the verdict, the' evidence does not point so strongly in favor of Trader as to justify granting Trader a judgment as a matter of law on the issue of whether Haas was a managerial agent of Trader and whether it was Haas who fired Williams on his own.[2]
With respect to the second defense, Trader contends that it had complied with Title VII in good faith through its “open-door” policy encouraging aggrieved employees to contact superiors about possible violations of Title VII. This court addressed a similar argument in Deffenbaugh-Williams, and held that Wal-Mart’s policy of encouraging employees to contact higher managers with grievances does not establish good-faith compliance with Title VII as a matter of law. 188 F.3d at 286. As in Dejfenbaugh-Williams, Trader presented no evidence of its responses to Williams’s complaints or of any specific efforts to comply with Title VII other than the evidence of its generic open-door policy which Williams had not used. Accordingly, “the evidence of [Trader’s] antidiscrimination good faith was certainly not so overwhelming that reasonable jurors could not conclude otherwise.” Def-fenbaugh-Williams, 188 F.3d at 286.[3]
Trader has not demonstrated that there is insufficient evidence to support the jury’s determination that Haas acted with sufficient willfulness to justify punitive damages. Further, Trader has proved neither that there was insufficient evidence to support the jury’s determination that Haas was a managerial agent of Trader nor that it had established a good faith Title VII compliance system. Accordingly, I respectfully dissent on the issue of punitive damages and would affirm the punitive damages award.
With respect to the reversal of attorney’s fees, I disagree that this court has the authority to reverse the district court’s award of attorney’s fees merely because it has reversed a portion of the damages award. This court reviews the district court’s lodestar calculation for clear error and any departure from the lodestar calculation for abuse of discretion. See Hadley v. VAM PTS, 44 F.3d 372, 375-76 (5th Cir.1995). Thus, the district court’s calculation of the lodestar amount in the present case, although it may well have been different had punitive damages not been awarded, may only be reversed by this court if such calculation was clearly erroneous.
It is well settled that if a prevailing party under Title VII is entitled to attorney’s fees for all hours worked on claims, victorious or not, that “arise out of the same course of conduct and are not easily separated on the basis of each claim or defendant.” Cobb v. Miller, 818 F.2d 1227, 1235 (5th Cir.1987); see also Migis v. Pearle Vision, Inc., 135 F.3d 1041 (5th Cir.1998); id. at 1056 (Barksdale, J., dissenting) (“However, I disagree with the majority’s implicit conclusion that, when calculating the lodestar, the magistrate judge did not clearly err by including hours spent on unsuccessful claims and unnecessary discovery in pursuit of irrelevant evidence.”). The Supreme Court has explained this principle as follows:
Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and. indeed in *491 some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail'on every contention raised in the lawsuit.
Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).
Applying Supreme Court and this circuit’s precedent to the present case, it does not appear that the district court’s lodestar calculation was clearly erroneous. Williams was victorious on all her claims of liability and, under the majority opinion, has merely failed to prevail on appeal in seeking punitive damages against Trader. Trader has not demonstrated that the legal services of Williams’s counsel related to the largely parasitic claims of punitive damages were not totally subsumed within the legal services necessary to the successful prosecution of the underlying claims of liability and compensatory damages, let alone show that such legal services related to punitive damages did' not “arise out of the same course of conduct” or that they are “easily separated on the basis of each claim or defendant.” Cobb, 818 F.2d at 1235.
Tjiat the punitive damages are being reversed on appeal does not affect this analysis. This circuit has in the past affirmed a district court’s calculation of attorney’s fees as not an abuse of discretion despite reversing a punitive damage award that reflected a significantly greater percentage of the total award than in the present case. See Stevenson v. TRW, Inc., 987 F.2d 288 (5th Cir.1993) (affirming liability and compensatory damages of $30,-000, reversing punitive damages of $100,-000, and affirming attorney’s fees of over $20,000). As I thus believe that this panel is departing from circuit and Supreme Court precedent by vacating the attorney’s fees award without any showing of clear error in the award by the appellant, but rather as a matter of law merely because part of the award has been reversed or reduced on appeal, I must respectfully dissent,

. The record flatly contradicts the statement of the majority that only Sonner had the authority to fire Williams; rather than attempt to address Haas's limited authority to fire managerial level employees, the majority chooses to ignore it.

. Since the jury determined that Haas was a managerial agent of Trader, it is irrelevant whether Haas acted outside the scope of his employment in dismissing Williams for purposes of imputing liability to Trader for punitive damages under Title VII. See Deffenbaugh-Williams, 188 F.3d at 286 n. 6.

. Despite the majority's implication otherwise, that Williams failed to avail herself of the open-door policy does not convert it into a good faith Title VII compliance system. Whether it would have been preferable for Williams to have addressed a complaint of Haas’s behavior to Sonner is irrelevant to the issue of whether Trader had established a good faith Title VII compliance system.