**Wavy H. DOYLE, and Era L. Doyle,**

v.

**Gayle Louis SCHULTZ f/k/a Gayle Louis Doyle, Mark C. Landry, and Newman, Mathis, Brady, Wakefield & Spedale.**

**No. Civ.A. 98–2332.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

March 14, 2000.

Robert G. Nida, Gold Weems et al., Alexandria, LA, Jimmy R. Faircloth, Jr., Faircloth & Davidson, Alexandria, LA, for Wavy H. Doyle, plaintiff.

Daniel G. Brenner, Bolen & Erwin, Alexandria, LA, Mark C. Landry, Newman Mathis et al., Metairie, LA, for Mark C. Landry, defendant.

## RULING AND JUDGMENT

LITTLE, Chief Judge.

This matter was referred to the magistrate on 16 December 1999 for disposition of the motions for summary judgment filed independently by defendant Gayle Louis Schultz ("Schultz") and defendant Newman, Mathis, Brady, Wakefield & Spedale ("Newman Mathis"), a professional law corporation. In his report and recommendation, the magistrate recommends that we grant defendant Schultz's and defendant Newman Mathis' motions for summary judgment. As our analysis of the issues in this case differs from that of the magistrate, we will proceed to conduct an independent analysis of the defendants' motions for summary judgment, and adopt the magistrate's findings and analysis only where specifically noted.

The facts giving rise to this lawsuit have previously been stated by this court. As such, only a brief recitation of the facts is necessary. Schultz obtained a judgment in Texas against the Doyles and their son, Jerry Wayne Doyle, relating to an alleged conspiracy between Jerry Wayne Doyle and his parents to conceal community assets from Shultz, Jerry Wayne Doyles' former wife. Schultz thereafter attempted to enforce the Texas judgment against the Doyles' home in Louisiana by filing suit in the 9th Judicial District Court, Parish of Rapides. On 9 March 1998, the Ninth Judicial District Court issued an order recognizing the Texas judgment pursuant to the Louisiana version of the Uniform Enforcement of Foreign Judgments Act, La.Rev.Stat.Ann. § 13:4241, et seq. Three days later, on 12 March 1998, Schultz requested that the clerk of court issue a writ of fieri facias, ("fi fa") directing the sheriff to seize the Doyles' home pursuant to Louisiana Code of Civil Procedure art. 2253. According to the Doyles, Schultz requested the writ of fi fa before the Doyles received notice of the 9 March 1998 order recognizing the Texas judgment and before the delays for suspensive appeals had run.[1]

The clerk of court issued the writ of fi fa on 20 March 1998, and the sheriff constructively seized the Doyles' home on 30 March 1998. The Doyles apparently did not receive notice of the 9 March 1998 order until the sheriff arrived on 30 March to seize their home. The Doyles then took action to fight the seizure of their home, successfully petitioning the Ninth Judicial District Court to revoke the writ of fi fa and issue a preliminary injunction restraining the sale of their home. The Ninth Judicial District Court subsequently declined to enforce the Texas Judgment, concluding that the Texas judgment is void for lack of personal jurisdiction over the Doyles. See Pls.' Opposition to Magistrate's Report and Recommendation at 9.

In their complaint filed with this court, the Doyles assert a claim pursuant to 42 U.S.C. § 1983 based on the alleged wrongful seizure of their home resulting from Schultz's premature invocation of the writ of fi fa. They claim that Schultz, her attorney Mark Landry, ("Landry") and his firm, Newman Mathis, deprived plaintiffs of their due process rights by misrepresenting to the court that the Doyles had not filed a stay on the judgment, leading to an "improper request and issuance of the writ of fi fa." Pls.' Compl. ¶¶ 36–37. Plaintiffs also assert that the Louisiana rules and procedures for seizure under writ of fi fa violate due process requirements because no judicial officer is responsible to insure that a judgment is subject to execution before the writ issues and the seizure occurs. See Pls.' Compl. ¶ 22.[2]

---

1. Louisiana Code of Civil Procedure art. 2252 forbids the issuance of a writ of fi fa before the delays for suspensive appeal expire.

2. This court previously denied defendants' motion to dismiss for failure to state a claim. In our ruling, we found that plaintiffs had stated a claim against Schultz and Landry for deprivation of a right secured by the Constitution and the laws of the United States and that those defendants acted under color of state law.

In her motion for summary judgment, Schultz argues, by reference to deposition testimony, that she had no personal involvement in her lawyer's alleged action of depriving the Doyles's of their civil rights.[3] In its motion for summary judgment, Newman Mathis contends that the Doyles have not proffered any evidence to prove that Newman Mathis had any personal involvement, beyond that of the employer of Landry, in the alleged wrongful attachment of the Doyles' home. *See* Newman Mathis Mem. in Supp. of Mot. for Summ.J. at 2–4.

### 1. *Plaintiffs' Contention that the Magistrate Addressed Issues not Presented by Defendants' Motions for Summary Judgment*

In their opposition to the magistrate's report and recommendation, the Doyles contend that the magistrate considered matters not presented by Schultz's and Newman Mathis' motions for summary judgment and, therefore, the defendants did not have the opportunity to be heard on those issues. Specifically, plaintiffs argue that the defendants' motions for summary judgment addressed only "whether the participation of Newman Mathis and Gayle Schultz in the wrongful conduct was sufficient to make them state actors for the purposes of 42 U.S.C. § 1983." Pls.' Opp. to Magistrates Report and Recommendation at 2. According to plaintiffs, the Magistrate should not have addressed either plaintiffs' claims as to Landry or the constitutionality of Louisiana's fi fa procedures. *See id.*

We agree with the plaintiffs that the magistrate should not have discussed the merits of plaintiffs' claims against Landry. Indeed, Landry did not file a motion for summary judgment, and therefore the Doyles' claims against Landry remain before the court, despite any suggestion by the magistrate to the contrary. We decline to find, however, that the magistrate departed from the motions for summary judgment as to Schultz and Newman Mathis. In her motion for summary judgment, Schultz "requests that this Court grant the Motion for Summary Judgment herein as to mover, dismissing petitioner's claims as to defendant Schultz." Schultz's Mot. for Summ.J. at 1. Newman Mathis also argues in its motion for summary judgment that it is "entitled to be dismissed from this lawsuit." Neither Shultz nor Newman Mathis ask for partial summary judgment. Rather, they both request dismissal of *all* of plaintiff's claims as to her. *See* Newman Mathis Mot. for Summ.J. at 2. The magistrate was therefore authorized to consider all possible grounds for granting summary judgment as to these two defendants. Moreover, based on plaintiffs' opposition filed in response to the Magistrate's Report and Recommendation, this court is now entertaining the plaintiffs' arguments on the issues discussed by the magistrate. Plaintiffs can no longer argue that this court's decision is based on an inadequate record and that it has not had the opportunity to be heard on the issues considered by the magistrate.[4]

---

**3.** Schultz points to the deposition testimony of Wavy Doyle wherein he states that he did not know who made the misrepresentations to the court that led to the issuance of the writ of fi fa. *See* Doyle Dep. at 56.

**4.** The one case cited by plaintiffs for the proposition that it is improper for the court on a motion for summary judgment to rule on issues not raised in the motion for summary judgment without affording the opposing party the opportunity to present its case to the court, is inapposite. The case, *Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 436–37 (5th Cir.1992), cited by plaintiffs dealt with a suit involving both tort and contract claims. The Fifth Circuit ruled that it was improper for the court to grant full summary judgment to a party that had requested only partial summary judgment on only one of the claims. In contrast, in the present matter, Schultz and Newman Mathis have requested that *all* of plaintiffs claims be dismissed against it. *Judwin* is not sufficiently analogous to the above captioned matter to be persuasive here.

## 2. Plaintiff's Claim Alleging Misuse of State Fi Fa Procedures

A plaintiff has a cause of action under section 1983 if he alleges that he has been deprived of a right secured by the Constitution by one acting under color of state law.[5] *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court held that private parties invoking a state attachment statute may be held liable under section 1983 if their actions are "fairly attributable to the state." *Id.* at 936, 102 S.Ct. at 2753. A private party's actions are fairly attributable to the state if the constitutional deprivation is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and "the party charged with the deprivation [is] ... a person who may fairly be said to be a state actor." *Id.* A party may be considered a state actor if he "has acted with or has obtained significant aid from state officials," or if his "conduct is otherwise chargeable to the State." *See id.* at 923, 102 S.Ct. at 2754.

In this case, there is no question that the alleged constitutional deprivation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754. In Louisiana, state officials are directly involved in the issuance and the execution of the writ of fi fa. The writ of fi fa is strictly a state-created and state-executed mechanism. This is sufficient to establish action under color of state law for purposes of the fourteenth amendment. *See generally Davis Oil*, 873 F.2d 774, 781 n. 781 (5th Cir.1989) (analyzing the meaning and application of the *Lugar* requirement that the private party be acting "under color of state statute"). We must next ascertain whether the defendants are state actors. Under *Lugar*, an allegation of misuse of a state statute by a private party is not actionable under section 1983 because that party cannot qualify as a state actor. *See Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756; *Davis Oil*, 873 F.2d at 779–80. Yet, where the plaintiffs challenge "the constitutionality of a state attachment procedure ... the private party who sets that attachment scheme in motion is to be considered a state actor." *Wyatt*, 994 F.2d at 1117 (citing *Wyatt v. Cole*, 504 U.S. 158, 162, 112 S.Ct. 1827, 1830, 118 L.Ed.2d 504 (1992); *Folsom Investment Co. v. Moore*, 681 F.2d 1032, 1037 (5th Cir.1982); *see Lugar*, 457 U.S. at 939–42, 102 S.Ct. at 2755–56; *Davis Oil*, 873 F.2d at 780).[6]

To the extent that plaintiffs allege in their complaint that the defendants' "improper request" for the writ of fi fa deprived them of their due process rights, plaintiffs do not have a cognizable section 1983 claim since the improper request cannot fairly be attributed to the state and was the product of purely private action. *See Lugar*, 457 U.S. at 940, 102 S.Ct. at 2755.[7] The plaintiffs' complaint also alleg-

---

5. The magistrate has already ably set forth the applicable standard for summary judgment, we see no need to reiterate that standard here.

6. Under established jurisprudence, it is therefore possible for a private party to be a state actor by setting in motion the procedures for seizure through a writ of fi fa, but not be considered a state actor in the context of misuse of the fi fa statute. This is a somewhat confusing result, but, is a distinction frequently made in the relevant case law.

7. Interpreting the plaintiffs' complaint, the Supreme Court in *Lugar* determined that, to the extent that plaintiffs' alleged that defendants had maliciously, wilfully, and unlawfully used the Virginia attachment statute to get the court to issue an attachment of plaintiffs' property, the defendants were not state actors. *See Lugar*, 457 U.S. at 940, 102 S.Ct. at 2755. The allegation that defendants "invoked the statute without grounds to do so could in no way be attributed to a state rule or state decision." Similarly, in this case, the

es, however, that the defendants violated their due process rights in that the writ of fi fa was improperly *issued* and *executed.* This allegation suggests that the State had some hand in depriving plaintiffs of their due process rights in allowing the writ of fi fa to be issued without notice to the Doyles of the existence of the Louisiana judgment against them. If the defendants, in conjunction with the State, violated plaintiffs' due process rights in issuing and executing the writ of fi fa, plaintiffs would have a cognizable claim under section 1983. *See Lugar,* 457 U.S. at 937, 102 S.Ct. at 2753. We, therefore, will proceed to determine whether the defendants can be considered state actors and whether the procedures used in this case to issue and execute the writ of fi fa met constitutional requirements.

### 3. *Plaintiff's Claim Challenging Constitutionality of Louisiana Fi Fa Procedures*

#### (a) *Constitutionality of Procedures Used*

A close reading of the plaintiffs' complaint reveals that they are challenging the constitutionality of the Louisiana statutory scheme in so far as it allows creditors to pursue a writ of fi fa before the underlying judgment is final without judicial approval.[8] Due process requires, at a minimum, "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950); *see also Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (holding that notice by mail or other means as certain to insure actual notice is minimum constitutional

precondition). Although there are no cases directly addressing the constitutionality of Louisiana's fi fa statutes, the Fifth Circuit has implicitly acknowledged the constitutionality of these procedures as long as the plaintiffs receive notice and an opportunity to be heard prior to seizure. *See, e.g., Cobb v. Miller,* 818 F.2d 1227, 1239 (5th Cir.1987). "[O]ne of the concerns about writs of execution such as fieri facias is that the party whose property is to be seized has notice and an opportunity to be heard before seizure." *Id.* We agree with the magistrate that the Louisiana procedures for issuing and executing a writ of fi fa are constitutional as written. Misapplication of the due process protections provided in the statute can, however, give rise to a section 1983 claim. In *Cobb,* which, like the present case involved a challenge to the execution of a writ of fi fa, the court ruled that there was no constitutional deprivation because the plaintiffs had received notice and opportunity to be heard before the writ of fi fa was executed. The plaintiffs "were well aware of the ... judgment against them." *Id.* Similarly, when the defendants filed their motion to execute the underlying judgment,[9] the judgment was final and executable. *See id.* Given the adequate notice to the plaintiffs in *Cobb,* the court concluded that "there was no 'surprise' to [plaintiff] that would concern Louisiana courts or raise constitutional concerns." *See id.*

■ Here, in contrast, the Texas judgment was not final and executable and the Doyles did not receive notice of the Louisiana court order enforcing the Texas judgment or the impending seizure until the sheriff arrived at their door with the writ. Shultz was able to procure and execute the writ of fi fa without notice to the Doyles of the existence of the Louisiana judgment.

---

plaintiffs allege that defendants requested a writ of fi fa without proper grounds. Under *Lugar* this simply is not state action.

**8.** No judicial official is involved in issuing the writ of fi fa in Louisiana. Rather, the clerk of

court makes this determination. La.Rev.Stat. Ann. § 13:4281.

**9.** In *Cobb,* the plaintiffs had won a judgment against defendants for civil rights violations. *See Cobb,* 818 F.2d at 1229.

This is precisely the kind of surprise and ex parte action that the court in *Cobb* suggested would raise constitutional concerns. The Doyles were entitled to notice of the fact that the Texas judgment had gone into effect in Louisiana and to appeal the Louisiana judgment before a writ of fi fa was issued by the State. Given the fact that the writ of fi fa was executed despite lack of notice and opportunity for the Doyles to present their case to the court, we conclude that the State's issuance and execution of the writ of fi fa in this case deprived plaintiffs of their due process rights.[10]

**(b)** *State Actor Requirement*

■ We have determined that the procedures used by the State to obtain and execute the writ of fi fa in this case fall short of fulfilling the requirements of the due process clause. Pursuant to the requirements of section 1983, we must next determine whether Shultz's and Newman Mathis' involvement in the constructive seizure of plaintiffs' home transforms them into state actors. *See Davis Oil*, 873 F.2d at 780 (citing *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756) (concluding that a constitutionally deficient state procedural scheme may be addressed in a section 1983 action "as long as the second requirement—that the defendant 'may fairly be said to be a state actor'—is also met."). "[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a state actor." *Lugar*, 457 U.S. at 941, 102 S.Ct. at 2756. Joint participation is considered a low threshold in the context of ex parte prejudgment proceedings. *See Wyatt*, 994 F.2d at 1117; *Davis Oil*, 873 F.2d at 780. The Supreme Court has specifically held that joint participation is established when the State has created a

system whereby state officials will attach property on the *ex parte* application of one party.... *Lugar*, 457 U.S. at 942, 102 S.Ct. at 2756.

■ In this case, we agree with the magistrate and adopt his finding that *Lugar* supports the conclusion that Schultz is a state actor insofar as plaintiffs challenge her role in invoking state-provided procedures to execute the writ of fi fa against the Doyles' home. *See* Magistrate's Report and Recommendation at 7. Here, Schultz participated in the issuance of the writ of fi fa, setting the procedures in motion that led to constructive seizure of the Doyles' home by the sheriff. Although plaintiffs agree that Shultz should be considered a state actor, they assert that the magistrate erred in concluding that Newman Mathis is not a state actor because Newman Mathis did not personally participate in obtaining the writ of fi fa. A lawyer may be a state actor if he employs the state to enforce or execute a state-provided procedure. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1267 (3d Cir.1994); *see also Wyatt*, 994 F.2d at 1118 (concluding that an attorney could be liable, along with the client, under section 1983 where the attorney "conspires to act under color of state law in depriving another of secured rights"); *Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir.1983) (declining to find that an attorney was a state actor simply because he petitioned the court to issue a subpoena duces tecum, but implicitly acknowledging that liability would be appropriate where "state officers seized the documents or otherwise acted to enforce the subpoena."). In *Jordan*, the Third Circuit approved the district court's finding that an attorney's use of the Pennsylvania garnishment procedure and the clients' instructions to them to do so made both of them state actors for purposes of

---

**10.** Contrary to the plaintiffs' argument in their complaint that Louisiana's rules and procedures for seizure under the writ of fi fa violate due process requirements because no judicial officer is responsible to insure that the writ has been properly issued, the real

constitutional threshold is the whether there has been notice and an opportunity to be heard. The fact that no judicial officer oversees the process does not, in itself implicate due process concerns if the requirements of *Mullane* and *Mennonite* are otherwise met.

section 1983. *See id.* "The principle that a private attorney does not become a state actor by virtue of being an officer of the court is not applicable to an attorney who invokes a state attachment procedure to seize property on behalf of a client. An attorney in these circumstances may be liable under § 1983." *Id.*

The ruling in *Jordan* involved similar facts and is directly applicable to this case. In *Jordan,* the Third Circuit concluded that the invocation of the state's garnishment procedure by the defendant and his attorney was sufficient for the court to find that the both parties were state actors. *See id.* Here, Shultz's attorneys petitioned the clerk of court for issuance of the writ of fi fa and, based on the information provided by Schultz and her lawyers, the clerk of court issued and the sheriff executed the writ before verifying that the plaintiffs had been afforded notice and an opportunity to be heard. As stated previously, joint participation is a low threshold in the context of ex parte prejudgment seizures. *See Lugar,* 457 U.S. at 942, 102 S.Ct. at 2756; *Davis Oil,* 873 F.2d at 780. Based on the degree of involvement between the State and the defendants in executing the writ of fi fa, we conclude that there was joint participation between Shultz, her lawyers, and the State sufficient to establish defendants as state actors. The question remains, however, as to which party should be considered Shultz's lawyer.

In its motion for summary judgment, Newman Mathis asserts that it is not a state actor because Landry was Shultz's sole attorney and the firm itself did not in any way participate in Shultz's case. *Jordan* did not address the issue of when it is appropriate for the law firm, and not just the individual lawyer working on the case, to be held to be a state actor.[11] The depositions submitted along with the defendants' motion for summary judgment and plaintiffs' response thereto show that Schultz hired Newman Mathis as her attorney,[12] Landry was working on the Schultz file for the firm,[13] all fees paid by Shultz were paid to the firm itself,[14] and Newman Mathis paid all expenses in conjunction with working the Schultz file.[15] Further, the firm name accompanied documents filed by Landry in the Louisiana courts. The nature of legal employment makes Newman Mathis as much Schultz's lawyer as Landry himself. Without Newman Mathis, Landry could not have pursued Schultz's case. Newman Mathis, through Landry's actions, may fairly be said to have set in motion the procedures that caused the State to issue and execute the writ of fi fa and therefore may be considered a state actor in this case. *See generally Wyatt,* 994 F.2d at 1117 ("the private party who sets th[e] attachment scheme in motion is to be considered a state actor").

In order to bring a valid claim under section 1983, a plaintiff must show a deprivation of a constitutional right by a state actor. *See* 42 U.S.C. § 1983; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). In the foregoing discussion we have con-

**11.** In *Jordan,* Fox, Rothschild was named as a defendant by stipulation. *See Jordan,* 20 F.3d at 1259 n. 8. Here, in contrast, the defendants dispute Newman Mathis' role in this case and does not automatically become a state actor by virtue of Landry's actions. Rather, the individual facts presented here must be examined in order to ascertain Newman Mathis' role in this case. *See* discussion infra. *Jordan* is, however, instructive in that it shows that a law firm may be held liable as a state actor under section 1983.

**12.** *See* Shultz Dep. at 50 (admitting that the firm, and not Landry, was recommended to her, and that she called the firm, and not Landry, to represent her).

**13.** *See* Mathis Dep. at 8 (explaining that at Newman Mathis, a lawyer works on a file on behalf of the firm); Landry Dep. at 18–19 (noting that both he and the firm are Newman Mathis' attorneys).

**14.** *See* Mathis Dep. at 18–19.

**15.** *See id.* at 25.

cluded that Shultz and Newman Mathis may be deemed state actors and that the procedures used in this case to obtain and execute the writ of fi fa were constitutionally deficient. Plaintiffs have established all elements necessary to bring a claim against Shultz and Newman Mathis. Defendants are not entitled to judgment as a matter of law on plaintiffs' claim that defendants are liable for the improper issuance and execution of the writ of fi fa by State officials. Accordingly, we DENY defendant Shultz's and defendant Newman Mathis' motions for summary judgment.

### III. Conclusion

Defendants Shultz and Newman Mathis each have requested summary judgment denying their involvement in the improper issuance and execution of the writ of fi fa, that led to the constructive seizure of the Doyles's property. For the reasons given above, and supplemented by the Magistrate's Report and Recommendation where specifically noted, WE GRANT Schultz's and Newman Mathis' motions for summary judgment as to plaintiffs' claim that Schultz and Newman Mathis misused the writ of fi fa because the defendants are not state actors under section 1983. As to plaintiffs' claim that Louisiana's statutory rules and procedures for executing a writ of fi fa were unconstitutional as applied in this case, we DENY Schultz's and Newman Mathis' motion for summary judgment as plaintiffs have fulfilled the requirements of section 1983 by showing a constitutional deprivation by a state actor.[16]

**16.** We note that defendant Landry did not file a motion for summary judgment and plaintiffs' claim against him remain before the court.