# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-924

**THE BANK OF NEW YORK MELLON, ET AL.**

**VERSUS**

**WHITNEY BLAINE SMITH, ET UX.**

**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
## THIRTY-FIFTH JUDICIAL DISTRICT COURT
## PARISH OF GRANT, DOCKET NO. 20,282
## HONORABLE JIMMY W. WILEY, JUDGE AD HOC
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, Billy H. Ezell, and Phyllis M. Keaty, Judges.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**

Robert G. Nida
Trevor S. Fry
Gold, Weems, Bruser, Sues & Rundell
2001 MacArthur Drive
P.O. Box 6118
Alexandria, LA  71307-6118
(318) 445-6471
**ATTORNEY FOR THIRD-PARTY PLAINTIFF/APPELLANT**
   Pamela D. Smith

Gus A. Fritchie, III
Edward W. Trapolin
Irwin Fritchie Urquhart & Moore LLC
400 Poydras St., Suite 2700
New Orleans, LA  70130
(504) 310-2100
**ATTORNEY FOR THIRD PARTY DEFENDANTS/APPELLEES**
   George Dean, Jr. and Dean Morris, LLP

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

This protracted litigation concerns an alleged default on a residential mortgage entered into by Whitney Blaine Smith and Pamela Deann LaCour Smith with Saxon Mortgage Services in 1999. The trustee for Saxon, J.P. Morgan Chase Bank sued to enforce the mortgage and promissory note via executory process. Chase was represented by Dean Morris, L.L.P. This court in *Bank of New York Mellon v. Smith*, 11-60, pp. 2-5 (La.App. 3 Cir. 6/29/11), 71 So.3d 1034, 1038-39, *writ denied*, 11-2080 (La. 11/18/11), 75 So.3d 462 (footnote omitted), set forth in greater detail the pertinent facts:

> The current claims of Mellon and Smith had their genesis in an earlier suit, brought by Chase in 2004 and dismissed without prejudice in 2009. Where clarity requires, we will refer to the 2004 Chase suit as Suit # 1, and we will refer to the current suit, the 2009 Mellon suit, as Suit # 2.

> **Suit # 1**

> In June of 2004, the Smiths defaulted on their 1999 mortgage loan with Saxon Mortgage Services, Inc. (Saxon). The loan was secured by the Smiths' home in Grant Parish. Two months after missing the June payment, Whitney Smith died in an automobile accident. Pamela Smith alleged that there was life insurance on the loan that should have paid it off upon Whitney's death, and she has a suit in federal court against the insurance company.

> In November of 2004, Chase, as trustee for Saxon, sued the Smiths by executory process, asked for the appointment of an attorney curator to represent Whitney, and caused the Sheriff of Grant Parish to deliver a notice of seizure to Pamela Smith on December 8, 2004. The seizure under executory process was constructive, allowing the debtor thirty days to defend against the actual seizure of the collateralized property. Smith, fearing that she would be evicted from her home over the holidays, moved her children out of the house and filed for an injunction to stop the seizure by executory process.

> At the hearing on the preliminary injunction in April of 2005, Judge Krake considered Smith's petition and testimony, along with the oppositions and affidavits of Chase and Saxon, and found in favor of Smith. The executory process employed by Chase was defective and not in authentic form due to Chase's failure to attach the original Note or certified copies of the Note and Mortgage to its petition in 2004. The face of the Note, which was apparently lost in 2004, bears

2

a stamp stating "Paid and Canceled by JP Morgan Chase," dated November 8, 2004. The stamp is unsigned and has an X over it. The May 2005 judgment of Judge Krake granted Smith's injunction and enjoined any sale of her home by executory process, ordered Chase to convert the executory proceeding to an ordinary proceeding, and preserved Smith's claims of wrongful seizure under state and federal law. Chase did not appeal this judgment and three weeks later converted its suit to a foreclosure by ordinary proceeding.

In September of 2005, Smith reconvened against Chase and filed a third party demand against Saxon, asserting wrongful seizure under Louisiana law, conversion, and due process violations under federal law, 42 U.S.C. 1983. Under the third cause of action, Smith alleged that Chase, Saxon, and Dean Morris were solidarily liable, and were state actors for the purposes of 42 U.S.C. 1983, in that they had wrongfully used the executory process and "the powers and authorities of the State of Louisiana" to seize her home. She further asserted that, while executory process is basically constitutional, it was employed in an unconstitutional manner by Chase, Saxon, and Dean Morris. In 2006, Chase, Saxon, and Dean Morris filed a motion to dismiss Smith's claims for failure to serve.

On November 2, 2006, Judge ad hoc Peyton Cunningham dismissed Smith's claims pursuant to La.Code Civ.P. art. 1672(C), which mandates a dismissal without prejudice and allows the re-filing of suit. The dismissal by Judge Cunningham came to this court on appeal, but before we rendered a decision, Smith re-asserted her demands against Chase and Saxon for wrongful seizure. Chase and Saxon filed four exceptions and a motion to strike the jury demand against Smith's re-asserted demands, which were apparently not heard until July of 2009.

In May of 2008, finding no written waiver of service by Chase or Saxon of Smith's 2005 incidental demands, and finding that her faxing of the demands was insufficient where service was required by the sheriff, we affirmed Judge Cunningham's 2006 dismissal without prejudice. See *JP Morgan Chase Bank v. Smith*, 07-1580 (La.App. 3 Cir. 5/21/08), 984 So.2d 209. We did not address Smith's re-asserted demands or the exceptions to them, which were not within our purview or knowledge.

At the July 2009 hearing on Chase's and Saxon's various exceptions to Smith's re-asserted demands, Judge ad hoc Ronald Lewellyan informed the parties that he was going to dismiss the entirety of Suit # 1.

On August 3, 2009, without ruling on the re-asserted demands or the exceptions, Judge Lewellyan issued a judgment dismissing Suit # 1, Chase's suit against Smith, and Smith's re-asserted demands against Chase and Saxon.

**Suit # 2**

3

On July 30, 2009, Mellon filed a suit against Smith to enforce the Note and Mortgage by ordinary proceeding.

On September 17, 2009, Smith answered Mellon's suit, asserting an exception of no right of action and a reconventional demand against Mellon, and asserting third party demands against Chase and Dean Morris. As in Suit # 1, Smith again asserted wrongful seizure under state law, conversion, and due process violations under 42 U.S.C. 1983.

Mellon, Chase, and Dean Morris filed numerous exceptions to Smith's reconventional and third party demands. The trial court granted all exceptions filed by Mellon, Chase, and Dean Morris, and it denied Smith's exception of no right of action against Mellon.

This court overruled the trial court's grant of the exception of no cause of action, finding the facts alleged by Smith were sufficient to state a cause of action under state law and under 42 U.S.C. § 1983 (hereafter section 1983) for the alleged wrongful seizure of Smith's home. We found Smith's allegations were sufficient to establish that the seizing creditor and its counsel, Dean Morris, L.L.P., were state actors subject to liability for the seizure of Smith's home under section 1983.

Mellon Bank applied for writs to the Louisiana Supreme Court, contending this court erred in finding the confession of judgment language in the October 18, 1999 mortgage was deficient under La.Code Civ.P. art. 2632. The writ was denied by the supreme court on November 18, 2011.

Following a remand to the district court, Smith amended her incidental demands to more clearly set forth the legal insufficiency of the confession of judgment language in the mortgage as a basis of liability. She also amended her incidental demands to assert a claim under section 1983 against George Dean, Jr. Smith also alleged with greater specificity the facts involving a pre-seizure notice to counsel for the seizing creditor and to Candace Courteau, a Dean Morris, L.L.P. attorney, that executory process was improper and to specify the actions of those persons in proceeding with the seizure despite being warned against such actions.

4

Smith and the bank resolved their claims against each other and the trial court confirmed the settlement by judgment of dismissal of those claims between those parties, while reserving to Smith her claims against Dean Morris, L.L.P. and George Dean, Jr.

On September 21, 2012, Dean Morris, L.L.P. filed a motion for summary judgment, said motion being subsequently joined by George Dean, Jr. The motions filed by Dean Morris and George Dean were identical. In the motions, Dean Morris and George Dean did not dispute their section 1983 violation, but maintained that state law defenses and certain federal law defenses shielded them from liability. Attached to the motion for summary judgment were the affidavits of the attorneys for Dean Morris, L.L.P., George Dean, Charles Heck and Candace Courteau, attesting that they were engaged to represent their client to collect a debt, acted within the course and scope of that retention, had no knowledge of defects in the evidentiary support for the executory proceeding and at all times acted in good faith.

Smith then filed a motion for partial summary judgment in which she asked the trial court to render judgment decreeing that the confession of judgment language in the October 18, 1999 mortgage was legally insufficient for the purposes of foreclosure by executory process. Smith argued language contained within this court's opinion in *Mellon*, 71 So.3d 1034, supported her argument that the language of the confession judgment was invalid. To the contrary, Dean Morris contended this court did not hold the language of the confession judgment was invalid. Rather it argued this court merely held the confession of judgment was missing certain words and it should not be held strictly liable for instituting an executory proceeding in 2004. Dean Morris further argued there was no constitutional violation because the mortgage was valid on its face and Smith had

5

no evidence that either Dean Morris or George Dean knew or had any reason to know the mortgage was not in authentic form.

The trial court rendered judgment granting the motion for summary judgment filed by Dean Morris and George Dean and denying the motion for partial summary judgment filed by Smith. The trial court specifically found "[t]here is no factual basis to conclude the attorneys were acting with specific malice toward the Smiths or with any specific intent to harm." The trial court concluded even if no notice of breach was sent, the failure "does not support an inference of actual notice or specific intent to harm." The trial court specifically mentioned that no sale or conversion took place, but only a notice of intended sale. Smith has appealed the trial court's judgment, asserting the following assignments of error:

1. The trial court failed to accord due respect to the decision of this court in *Mellon*, in refusing to find that the confession of judgment language in the October 18, 1999 mortgage was legally insufficient for foreclosure by executory process.

2. The trial court failed to accord due respect to the decision of this Court in *Mellon* in apparently refusing to find that the lack of authentic form of the October 18, 1999 mortgage and the failure to provide notice of acceleration of the note and mortgage gave rise to a section 1983 claim against Dean Morris and Mr. Dean.

3. The trial court erred in finding that the section 1983 claims of Pamela Smith are subject to Louisiana tort law defenses.

## ANALYSIS

This Louisiana Supreme Court in *Samaha v. Rau*, 07-1726, p. 3 (La. 2/26/08), 977 So.2d 880, 882-83 (footnote omitted), discussed the appellate standard of review for summary judgments:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, 2006-363 p. 3 (La.11/29/06), 950 So.2d 544, 546, see La. C.C.P. art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is

6

any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, 2006-1181 p. 17 (La.3/9/07), 951 So.2d 1058, 1070; *King v. Parish National Bank*, 2004-0337 p. 7 (La.10/19/04), 885 So.2d 540, 545; *Jones v. Estate of Santiago*, 2003-1424 p. 5 (La.4/14/04), 870 So.2d 1002, 1006.

The parameters of a motion for summary judgment have been described by this court as follows:

> A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C. P. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966(A)(2). In 1997, the legislature enacted La. C.C.P. art. 966 C(2), which further clarified the burden of proof in summary judgment proceedings, providing:

>> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

> This amendment, which closely parallels the language of *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which

> demonstrates he or she will be able to meet the burden at trial.... Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. (Emphasis added; citation omitted)

*Wright*, 2006-1181 p. 16, 951 So.2d at 1069-1070, *citing Babin v. Winn-Dixie Louisiana, Inc.*, 2000-78 (La.6/30/00), 764 So.2d 37, 39-40; *see also King*, 2004-337 p. 8, 885 So.2d at 545-546; *Jones*, 2003-1424 p. 4, 870 So.2d at 1005-1006; *Costello v. Hardy*, 2003-1146 p. 8-9 (La.1/21/04), 864 So.2d 129, 137-138; *Racine v. Moon's Towing*, 2001-2837 p. 4-5 (La.5/14/02), 817 So.2d 21, 24-25.

## I.      Law of the Case.

Initially, Smith argues she is entitled to rely on the law of the case doctrine to give conclusive effect to certain findings made previously by this court in *Mellon*. Generally, the law of the case doctrine applies to prior rulings of the appellate court and an appellate court will not reconsider its own ruling in the same case. *Gentry v. Biddle*, 05-61 (La.App. 3 Cir. 11/2/05), 916 So.2d 347. The application of this doctrine is discretionary. *Griggs v. Riverland Med. Ctr.*, 98-256 (La.App. 3 Cir. 10/14/98), 722 So.2d 15, *writ denied*, 99-385 (La. 5/28/99), 735 So.2d 622. We find the law of the case doctrine inapplicable to this case for several reasons.

The previous *Mellon* opinion specifically noted, in its discussion of the specific actions or inactions of the defendants, "[w]e are not deciding the merits." *Mellon*, 71 So.3d at 1045. The holding in that opinion was limited to whether Smith alleged sufficient facts to state a cause of action under section 1983. Moreover, counsel for Smith acknowledged the confession of judgment was not originally challenged by the parties prior to the decision in *Mellon*. The problems with the language found in the confession of judgment were noticed by this court sua sponte.

We also note George Dean, Jr. was not added as a third-party defendant until 2013, two years after *Mellon* was decided. The law of the case doctrine "is not binding against those who were not parties to the litigation at the time the prior decision was rendered." *Marsh Eng'g Inc. v. Parker*, 04-509, p. 7 (La.App. 3 Cir. 9/29/04), 883 So.2d 1119, 1124, *writ denied*, 04-2669 (La. 1/28/05), 893 So.2d 73 [citing *Hesse v. Champ Serv. Line*, 98-1627 (La.App. 3 Cir. 3/31/99), 732 So.2d 707]. Therefore, we find the trial court did not err in not applying the law of the case doctrine.

## II. *Use of Executory Process by Dean Morris.*

Louisiana Code of Civil Procedure Article 2631 provides that Executory Proceedings "are those which are used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, . . ." As we noted in *Mellon*, 71 So.3d at 1042:

> Louisiana's executory process itself was held to be constitutional in *Buckner v. Carmack*, 272 So.2d 326 (La.1973). However, even where the Louisiana procedure for issuing and executing a seizure is constitutional as written, misapplication of the due process protections provided in the statute can give rise to a section 1983 claim. *See Doyle*, 97 F.Supp.2d 763. A private party who sets an attachment scheme in motion is considered a state actor if the plaintiff challenges the constitutionality of the procedure. *See Id.* Here, Smith asserts that executory process was used in a manner that violated her due process rights, but she also asserts that the "process" deprived her of her constitutional rights.

"A plaintiff has a cause of action under section 1983 if he alleges that he has been deprived of a right secured by the Constitution by one acting under color of state law." *Doyle v. Schultz*, 97 F.Supp.2d 763, 767 (W.D. La. 2000). The United States Supreme Court in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753 (1982), held private parties invoking a state attachment statute may be held liable under section 1983 if their actions are "fairly attributable to the state." The *Lugar* court established a two-part test to determine whether the

9

deprivation of a party's rights by a private actor may be fairly attributable to the state: (1) the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible; and (2) the party charged with the deprivation must be a person who may fairly be said to be a state actor. *Id*. at 937.

In *Doyle v. Landry*, 67 Fed.Appx. 241, 245 (5th Cir. 2003), the United States Fifth Circuit upheld the district court's finding that a private party was a state actor in its effort to seize the plaintiffs' property:

> [A] private party's joint participation with state officials in the seizure of disputed property based on that party's *ex parte* application is sufficient to characterize the party as a "state actor" for purposes of the Fourteenth Amendment. As such, the Appellants were state actors because: (1) Schultz requested the writ of fi fa, which set into motion the procedures directly involving state officials that led to constructive seizure of the [plaintiffs'] home, and (2) as Schultz's attorneys, Landry and Newman Mathis may be considered state actors because they employed the state to execute the writ of fi fa, a state-provided procedure.

Dean Morris has argued the Louisiana Supreme Court decision in *Penalber v. Blount*, 550 So.2d 577 (La.1989), holds that a non-client is not permitted to sue the attorney who provokes the seizure of the non-clients property. However, as Smith notes, Dean Morris previously made the same argument in *Keys v. Dean Morris, LLP*, 12-49 (M.D. La. 2013). In *Keys*, the Dean Morris firm handled a foreclosure and represented to the court that a diligent search was made of the public records and all persons with an interest in the property in question were notified of the pending sheriff's sale. However, it was later determined there was in fact an inferior lienholder who had a judgment on the property. That lienholder filed a Petition to Enforce Judicial Mortgage and to Recover Loss Sustained in state court. Dean Morris removed the case to federal court and filed a motion for summary judgment contending it was not liable for its actions in the foreclosure proceeding. One of its arguments was that an attorney does not owe a duty to a non-client third

party and thus it could not be liable to plaintiffs in the absence of an intentional tort. The federal court in *Keys*, 12-49, at pg. 5 (footnotes omitted), addressed that argument as follows:

> The defendants also claimed the district court erred by denying the [request for a Judgment as a Matter of Law] for Landry and Newman Mathis with regard to the wrongful seizure claim because an attorney cannot be held liable to a non-client unless the attorney knowingly violated a prohibitory statute. The Fifth Circuit applied the holding in the Louisiana Supreme Court's decision in *Penalber v. Blount,* where it held that, "while an attorney may not be held liable to a non-client for malpractice or negligence because the attorney owed no duty to the non-client, an attorney could be held liable to a non-client for intentional tortious conduct." Further, the Louisiana Supreme Court explained "that the 'intent' element of an intentional tort is not concerned with a desire to do any harm. 'Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids. The defendant may be liable although ... honestly believing that the act would not injure the plaintiff.'"

The *Keys* court relied on *Doyle v. Landry*, 67 Fed.App'x. 241, to find the correct interpretation of the holding in *Penalber* produces no conflict between state and federal law and in the situation of a wrongful seizure, the intentional act by the attorney is independent of any element of good faith or bad faith. Thus, whether the attorney truly believed his actions were correct, it is irrelevant because the actions, even if in good faith, brought about the intended result. The *Keys* court noted that the court in *Doyle v. Landry*, 67 Fed.App'x. at 246, using the definition of an intentional tort as set forth in *Penalber,* found "while Landry [the attorney bringing the foreclosure proceeding] may have believed his interpretation of the law was correct, he intended to seize the Doyles' property and took measures to ensure that they were not apprised of the issuance of the writ before the sheriff seized their property." Thus, the court in *Doyle v. Landry*, 67 Fed.App'x. at 246, found the attorney "intentionally took measure to bring about a result which invaded the Doyles' interests in a way that the law forbids." A reading of *Keys*, *Doyle v. Landry* and *Penalber* clearly indicates the intent element may be satisfied even where the culpable party truly believes his act would not injure the plaintiff.

11

We agree with our earlier sentiment in *Mellon*, that absent a valid defense, Dean Morris and George Dean, Jr., are state actors liable for damages pursuant to section 1983.[1]

It is clear that the use of executory process requires authentic evidence, which was not present here. This court in *Mellon*, 71 So.3d at 1043, explained:

> In this case, the loan instruments were executed by the Smiths in 1999; the original Note was "lost" at the time of Chase's petition in 2004, and Chase apparently did not find the original notary and have the copies of the Note and Mortgage certified as true and correct.

---

[1] Dean Morris argues the line of cases culminating in the United States Fifth Circuit Court of Appeal's opinion in *Wyatt v. Cole*, 994 F.2d 1113 (5th Cir. 1993), supports its contention that Smith must show that Dean Morris failed to act in good faith and without probable cause in invoking the unconstitutional state procedures. The courts therein considered whether private defendants, charged with section 1983 liability for the alleged misapplication of State of Mississippi replevin, garnishment, and attachment statutes, later declared unconstitutional, were entitled to qualified immunity from suit. The federal district court held the Mississippi attachment statute was unconstitutional, but dismissed the lawsuit against defendants, finding they were entitled to qualified immunity. The Fifth Circuit Court of Appeal affirmed that ruling. *Wyatt v. Cole*, 928 F.2d 718 (5th Cir. 1991). The Supreme Court granted writs and reversed, finding that private parties were not automatically entitled to qualified immunity. *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827 (1992). The case was remanded back to the court of appeal for reconsideration in light of the court's earlier pronouncements in *Lugar*. On remand, the Fifth Circuit held under the facts of that case that "Wyatt has not shown that [defendants] either knew or should have known that Mississippi's replevin statute was unconstitutional prior to its invalidation in April 1989, [and] we affirm the district court's judgment." *Wyatt*, 994 F.2d at 1115.

In *Richardson v. McKnight*, 521 U.S. 399, 404-13, 117 S.Ct. 2100, 2103-08 (1997), the U.S. Supreme Court discussed the effect of *Wyatt*:

> *Wyatt* did not consider its answer to the question before it as one applicable to *all* private individuals-irrespective of the nature of their relation to the government, position, or the kind of liability at issue. Rather, *Wyatt* explicitly limited its holding to what it called a "narrow" question about "private persons . . . who conspire with state officials," [*Wyatt*, 504 U.S.] at 168, 112 S.Ct., at 1834, and it answered that question by stating that private defendants "faced with § 1983 liability for invoking a state replevin, garnishment, or attachment statute" are *not* entitled to immunity, *Id.* at 168-169, 112 S.Ct., at 1833-1834.

> *Wyatt*, then, did not answer the legal question before us, whether petitioners-two employees of a private prison management firm-enjoy a qualified immunity from suit under § 1983.
> . . .
> *Wyatt* explicitly stated that it did not decide whether or not the private defendants before it might assert, not immunity, but a special "good-faith" defense. The Court said that it

>> "d[id] not foreclose the possibility that private defendants faced with § 1983 liability under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) could be entitled to an affirmative defense based on good faith and/or probable cause or that § 1983 suits against private, rather than governmental, parties could require plaintiffs to carry additional burdens." *Wyatt*, 504 U.S., at 169, 112 S.Ct., at 1834.

But because those issues were not fairly before the Court, it left "them for another day." *Id.*

Thus, it is clear *Wyatt* did not hold private defendants faced with section 1983 liability under *Lugar* would always be entitled to an affirmative defense based on good faith and/or probable cause. It held, in that case, that where private parties properly rely on a state statute not previously declared to be unconstitutional without knowing or having reason to know of its constitutional infirmity, they are entitled to a good faith defense. Those facts are not found here.

Notwithstanding, Chase asserted in that petition, through its counsel, Dean Morris, that all evidence attached *was* authentic. This was not true, but the lack of authentic evidence was apparently not noted by the state court judge who approved the seizure.

Subsequently, as Smith asserts, and the record confirms, Smith obtained a judgment of injunction to stop the seizure by executory process because Chase's evidence was defective. The May 2005 judgment of preliminary injunction ordered Chase to convert its action to an ordinary proceeding and specifically preserved Smith's actions for wrongful seizure under state law and for section 1983 violations under federal law.

Smith also noted the record establishes on November 4, 2004, Dean Morris received the original October 18, 1999 promissory note stamped "Paid and Canceled," but still proceeded to foreclose upon a note which was apparently satisfied. The deposition of George Dean, Jr. establishes this fact and it was stipulated to by counsel for Dean Morris. Mr. Dean denied having any personal knowledge of his firm receiving this note, and maintained he did not actually see the original note until preparing for his deposition in 2013. However, the record does establish Dean Morris received the original note, marked "Paid and Canceled," sixteen days before the seizure was made by the sheriff.

The record also establishes there was a letter sent by Trevor Fry, counsel for Smith, to Kathy Larson of Saxon Mortgage Company stating that "[i]n [his] opinion, the paperwork affecting the seizure is not sufficient for an executory foreclosure." Dean Morris argues that was insufficient to create any duty to look further into its choice to proceed by executory process. Smith has countered that, considering executory process is an extreme and harsh remedy requiring strict adherence to the letter of the law, this was sufficient to alert Dean Morris there was a problem.

There also was a letter, dated November 18, 2004, from Kathy Larson to Candace Courteau, an attorney with Dean Morris. Accompanying this letter was correspondence between Ms. Larson and Trevor Fry, including the letter

13

questioning the sufficiency of the paperwork relied on by Dean Morris to use the executory process. The letter from Ms. Larson to Ms. Courteau read as follows:

> Enclosed pursuant to our discussions are photocopies of correspondence we have received from the attorney representing Ms. Smith. As you can see, he believes that Saxon cannot proceed by executory process . . .

Smith contends this is further notice to Dean Morris that the use of executory process may have been improper in this case. The phrase "pursuant to our discussions" would also indicate Ms. Courteau was made aware of Mr. Fry's belief prior to November 18, 2004, the date this letter was received.

This court in *Mellon*, 71 So.3d at 1044, after reviewing the evidence in the record, summarized the actions in this case as follows:

> [H]ere, we have an assertion of unconstitutionality of the executory process regime itself; an assertion of unequal bargaining power in the confession of judgment; evidence of possible abuse in the loan instruments, i.e., a Note stamped "Paid and Canceled by JP Morgan Chase" on November 8, 2004, two days before Chase filed suit against Smith; a Note and Mortgage attached to Chase's petition for executory process that were not in authentic form; a judge's approval of the evidence; and, we have a judgment of injunction against Chase for lack of authentic evidence and an order to convert its action to ordinary process, which Chase did three weeks later, without appealing the order to convert, all of which Smith has asserted in her incidental demands. Smith specifically asserted that Chase and Dean Morris, though warned not to do so, "proceeded to utilize a process that deprived" her of her constitutional right to a pre-seizure hearing, caused a constructive seizure of her home by the Sheriff, and caused her to move her family out of the home. All of this occurred a few months after Smith's husband died and shortly before Christmas.

In *Keys*, 12-49, as discussed earlier, the federal court was presented with a situation where Dean Morris moved to foreclose on certain property. Despite Dean Morris representing to the court that it performed a diligent search of the private records for all persons with an interest in the property, it was later determined there was in fact an inferior lienholder who had a judgment on the property. In denying Dean Morris' motion for summary judgment in that case, the *Keys* court, relying heavily on this court's opinion in *Mellon,* concluded as follows:

14

Applying the applicable jurisprudence to the facts of this case, the Court denies Dean Morris' motion for summary judgment for the same reasons set forth by the *Mellon* court. GMAC, through its attorney Dean Morris, caused the seizure and sale of the property at issue in this case. Clearly, the seizure and sale occurred without the required notice to plaintiffs. As in *Mellon,* there are sufficient facts in the record to find that Dean Morris was a state actor under 42 U.S.C. § 1983 and that it violated plaintiffs' due process rights, intentionally or otherwise. While there is no evidence of intentionally tortious conduct on the part of Dean Morris, there is evidence that Dean Morris intentionally took measures which resulted in an invasion of the plaintiffs' property interests. Under Louisiana law, this is enough to create a genuine issue of material fact such that summary judgment is not proper under the facts of this case. Furthermore, just as the court stated in *Mellon,* the Court is not deciding the case on the merits but simply allowing plaintiffs to pursue their claims at trial.

*Keys*, 12-49 at 5.

The *Keys* court was clear that any apparent good faith provided no defense to Dean Morris in that case because the facts of the case satisfied the two pronged test for liability under *Lugar.* We find a similar result is warranted in this case.

In the present case, Chase, through its legal counsel, the Dean Morris firm, invoked executory process, which led to a seizure by the sheriff. There is a final judgment indicating that the seizure was unlawful and Smith has asserted she was caused damages as a result of that seizure. As in *Keys* and *Doyle v. Landry*, 67 Fed.App'x 241, the two-pronged test in *Lugar* was met. Prong one is satisfied because Dean Morris utilized a state foreclosure statute. The second prong is satisfied by the actual seizure of the Smith home by the Grant Parish Sheriff on November 26, 2004. We agree with Smith, that on November 26, 2004, the section 1983 claim "ripened." There was a gap of twenty-two days between the satisfaction of the two prongs, and during that period Defendants could have canceled the seizure and avoided any liability.

In its motion for summary judgment, Dean Morris argued Smith "had no evidence that Dean Morris was aware of any infirmity in the process or the evidentiary record." We disagree, and find there are genuine issues of material fact

15

in the record before us as to whether Dean Morris intentionally took measures which resulted in an invasion of the plaintiff's property interests, despite being put on notice by Smith's attorneys that executory process foreclosure was improper. The record before us creates issues of fact as to Dean Morris's awareness of possible problems with the foreclosure. On November 10, 2004 (sixteen days prior to the seizure), Dean Morris received the original October 18, 1999 promissory note stamped "paid and cancelled," but still proceeded to foreclose upon a note which was apparently satisfied without any additional inquiry. There is also evidence in the record that counsel for Smith alerted Dean Morris as to his belief that the paperwork was not sufficient to support use of executory process. The record also establishes at least one attorney with Dean Morris was aware of this allegation well before the seizure occurred. Thus, there are factual questions as to what Dean Morris knew in the weeks prior to the seizure of Smith's home on November 26, 2004. These genuine issues of material fact preclude the grant of summary judgment. Smith is entitled to pursue her claims at a full trial on the merits.

We note Dean Morris points out the initial seizure of Smith's home was constructive only. The trial court also specifically took note of this fact in its written reasons for judgment. The fact no actual conversion took place was addressed by this court in *Bank of Mellon*, 71 So.3d at 1046 (third-seventh alterations in original), and we cite with approval that previous discussion:

> Mellon makes much of the fact that the initial seizure of Smith's home was constructive only. We find this of no moment under the facts of this case. Chase had Smith served with a notice of seizure that caused her to move her family. In [*General Elec. Credit Corp. v.*] *Smigura*, 371 So.2d [1363] at 1365, we stated:
>
>> [A]fter the seizure was held to be wrongful in the hearing on the preliminary injunction and on the reconventional demand, General Electric voluntarily abandoned its executory proceeding, thereby releasing the seizure and permitting the return of the mobile home to Smigura. . . .

16

> Clearly, General Electric could not avoid damages for its tortious conversion by returning the seized property.

> Here, Smith did not get her order of injunction until May of 2005, after being served by the Sheriff with a notice of seizure on December 8, 2004. While the seizure was constructive only, but for the seizure notice, she would not have moved from her home or endured fear, anxiety, inconvenience, worry, and loss of use of her property. In *Smigura*, we stated the reason for damages in such cases: "It would be grossly unfair to allow [the plaintiff] to force [the defendant] to move from his home and then, after five months, say to him in effect[,] 'We are sorry we seized your home by mistake. You can return now.'" *Id*. at 1366.

> "[W]here property has been wrongfully seized through judicial process, damages for mental anguish and inconvenience due to the loss of use of the property are recoverable." *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 762 (La.1985) (citations omitted).

Thus, the fact no actual conversion took place does not eliminate Smith's claim for damages.

Smith has also requested this court reverse the trial court's denial of her partial motion for summary judgment and grant same, decreeing that the confession of judgment language in the mortgage is legally insufficient for the purposes of foreclosure by executory process. This court's previous ruling, which was a ruling on an exception of no cause of action, does not serve to carry Smith's ultimate evidentiary burden. In an exception of no cause of action, the court is required to take all factual allegations pled by Smith as true. The same is not so when the court considers whether to grant or deny a motion for summary judgment. Therefore, we affirm the trial court's denial of Smith's motion for partial summary judgment.

**DECREE**

For the foregoing reasons, the trial court's judgment granting Dean Morris's and George Dean, Jr's motion for summary judgment is reversed. The portion of the judgment denying Pamela Smith's partial motion for summary judgment is affirmed. The case is remanded to the trial court for further proceedings consistent

with this opinion. All costs of this appeal are assessed against Dean Morris, L.L.P. and George Dean, Jr.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**